## S. A. BROWN *et al.* v. E. A. BARBER *et al.*

CHATTEL MORTGAGES — *When Fraudulent* — *Retention of Property by Mortgagor.* When, by the terms of two chattel mortgages, no power of sale is given to the mortgagor of certain live stock, but the mortgagor, with the knowledge and acquiescence of the mortgagees, makes sales of portions of the live stock, and buys other live stock and mingles it with the mortgaged stock, makes weekly shipments, and buys and sells and adds to and takes from the live stock originally mortgaged, until, after the lapse of a few months, the identity of the particular live stock mortgaged is lost, and the mortgagor cannot identify it; and the mortgagor uses, controls, buys and sells, and in all other respects treats the live stock as his own, and as if no mortgage existed, and applies the proceeds of the sales made at his own discretion, and does not render an account to the mortgagees of the amount or disposition of the proceeds of stated sales, such mortgages are, as a matter of law, fraudulent and void as to other creditors of the mortgagor.

*Error from Allen District Court.*

ACTION by E. A. Barber and George C. Barber, partners as *E. A. Barber & Co.*, against S. A. Brown and F. E. Parish, partners as *S. A. Brown & Co.*, to foreclose chattel mortgages executed by one Robbins, and recover property embraced therein from defendants. Judgment for plaintiffs. Defendants bring error. The facts appear at large in the opinion.

*J. D. McCleverty,* and *G. A. Amos,* for plaintiffs in error.

*J. B. F. Cates,* and *E. A. Barber,* for defendants in error.

Opinion by SIMPSON, C.: This is an action commenced by E. A. Barber & Co. in the district court of Allen county to foreclose certain chattel mortgages, executed by E. S. Robbins, and to recover of S. A. Brown & Co. certain personal property that they claim was embraced in the chattel mortgages made to them by Robbins. Robbins was engaged in buying, selling and shipping live stock, and resided on a large farm that he owned near the city of Humboldt. S. A. Brown & Co. and E. A. Barber & Co. are private banking firms, both

doing business in Humboldt, the bank of Brown & Co. being under the management of one T. W. Phelps. During the year 1886, and until some time in April, 1887, Robbins was depositing money and checking against the same, and from time to time receiving accommodation loans, and was permitted to overdraw his account in the banking house of S. A. Brown & Co. To secure S. A. Brown & Co., Robbins gave to them several chattel mortgages on live stock for loans and advances made to him by the banking house, all of which are set forth in the record, but only two of these mortgages are found and adjudged to be invalid in this action. One of these is dated January 13, and the other April 15, 1887. On the 13th day of January, 1887, Robbins borrowed of S. A. Brown & Co. $3,000, and to secure the same gave a chattel mortgage on a large amount of live stock, consisting of horses, mules, and cattle. On or about the 15th day of April, 1887, Robbins ceased to do his banking business with the house of S. A. Brown & Co., and was at that time indebted to them, in addition to other amounts, in the sum of $3,500, which was unsecured, and to secure it Robbins on that day executed and delivered to S. A. Brown & Co. a chattel mortgage on certain live stock, a portion of which was embraced in the one of date January 13th. After the execution of the mortgage of date April 15, 1887, Robbins ceased to do business with S. A. Brown & Co., and commenced to do his banking with E. A. Barber & Co., to whom he was indebted in the sum of $2,600 on previous transactions. E. A. Barber & Co. advanced money at intervals from the 15th day of April, 1887, to July 23 of the same year, at which time he was owing them about $4,000, and to secure it he gave them a chattel mortgage on a large number of horses and cattle. From July 23, 1887, until about the 10th day of August of the same year, E. A. Barber & Co. advanced Robbins additional sums of money, amounting to about $4,000, for which they had no security. About that time they ascertained from S. A. Brown & Co. the amount of Robbins's indebtedness to them, and discovered the fact that S. A. Brown & Co. were holding chattel mortgages on a large part of Rob-

bins's personal property. On the 9th day of August, E. A. Barber & Co. entered into a written agreement with Robbins, by which he agreed to give them as additional security for the first $4,000 a first chattel mortgage on all his personal property not covered by any of the mortgages made to S. A. Brown & Co., and a second chattel mortgage on all his personal property embraced in the mortgages to S. A. Brown & Co., and to assign to E. A. Barber & Co. two life insurance policies of the face value of $10,000 each, and to give them a second mortgage on all his real estate, amounting to 880 acres of land. The chattel mortgages were executed and delivered in pursuance of this agreement. On the 2d day of January, 1888, Robbins had a large number of cattle, horses, mules and hogs on hand, and had no feed for them. In this condition of affairs, he made a proposition to S. A. Brown & Co., whose mortgage covered some, if not a large portion of the same, to turn over to them the property covered by their mortgages; and, in pursuance of such agreement, they took possession of the live stock mentioned in the sixteenth special finding of the referee. The live stock on which E. A. Barber & Co. had a first mortgage was by Robbins placed in the custody of one Alderman, under a contract made by Robbins and Alderman for care and feed.

The case was by stipulation of parties and an order of the district court referred to W. L. Simons, Esq., to try the same and report his findings of fact and conclusions of law. In June, 1888, the referee made his report, and his findings of fact and conclusions of law are as follows:

"1. The plaintiffs, E. A. Barber and Geo. C. Barber, are, and ever since the 1st day of January, 1886, have been, partners doing business at Humboldt, Allen county, Kansas, under the firm-name of E. A. Barber & Co. The defendants S. A. Brown and F. E. Parish are, and ever since the 1st day of May, 1885, have been, partners doing business as bankers at Humboldt, Allen county, Kansas, under the firm-name of S. A. Brown & Co.; and that the defendant T. W. Phelps is and has been during all of said time the general agent of said S. A. Brown & Co., in charge of and managing their business.

34—47 KAS.

The defendants E. S. Robbins and Mary J. Robbins were, on the 12th day of January, 1887, and have been ever since, husband and wife, each to the other; and that on said 12th day of January, 1887, they resided, and ever since have resided, upon section 25, in township 25, of range 18, in Allen county, Kansas; and said section 25 and also section 36 in the same township and range, on the said 12th day of January, 1887, constituted, and was occupied and used and ever since has constituted and been occupied and used by said E. S. Robbins as his farm; and from January 1, 1887, until August 3, 1887, said E. S. Robbins was engaged in farming, and raising, buying, selling and shipping live stock, such as horses, mules, cattle, and hogs.

"2. On the 12th day of January, 1887, the said E. S. Robbins executed and delivered to said S. A. Brown & Co. his promissory note of that date for $3,000, at 90 days, with 12 per cent. interest per annum from its maturity, for money loaned by said S. A. Brown & Co. to said E. S. Robbins, being the note first mentioned and copied in the answer of the defendants S. A. Brown, F. E. Parish, and T. W. Phelps; and to secure the payment of said note said E. S. Robbins, on the 13th day of January, 1887, executed and delivered his chattel mortgage of that date, duly verified by affidavit thereon, to said S. A. Brown & Co., upon the following-described personal property, to wit: 25 head of horses, mares and geldings of all ages; 8 yearling colts; 14 work mules, all ages; 90 head of calves nearly one year old; 80 head of cows of all ages; 70 head of yearling past, steers and heifers; being the first chattel mortgage mentioned in said answer last named, and the same chattel mortgage verified as aforesaid, of which 'Exhibit A' attached to said last-mentioned answer is a copy. Said mortgage was duly filed in the office of the register of deeds in Allen county, Kansas, and duly entered on the records of chattel mortgages on the 15th day of January, 1887; that at the time said chattel mortgage was executed and delivered, all the property described therein, as above, was the property of said E. S. Robbins, and was then in his possession and situated on his farm described in the foregoing first finding, and was all of the property then owned by him of the horse, cattle or mule kind. On the day following the execution of said mortgage said E. S. Robbins, with the knowledge and consent of said S. A. Brown & Co., commenced, and, with such knowledge and consent of the said S. A. Brown & Co.,

continued from said time until the execution of the mortgage hereinafter mentioned in the sixth finding of this report, on the 23d day of July, 1887, to treat and deal with said mortgaged property as his own, and from day to day to exchange portions thereof for other stock and to sell other portions thereof, and to purchase other live stock of the same general kind and character, and turn such purchased stock among and mingle the same with said mortgaged stock promiscuously, in such a manner and to such an extent that the identity of said mortgaged stock was lost, and then to select out promiscuously from the aggregate lot or number so commingled, of the stock so purchased and the stock mortgaged as aforesaid, a number of head nearly equal to but less than the number so purchased, and ship such selected stock to Kansas City, Mo., and there sell them, and use the proceeds of such sales for his own use and benefit, and without accounting therefor to said S. A. Brown & Co. in any manner whatsoever; neither did said S. A. Brown & Co. request or expect him to account for such proceeds. From January 13, 1887, to April 15, 1887, purchases were made and added to, and sales and shipments were made from the '90 head of calves,' and the '70 head of yearlings past,' mentioned in said mortgage, until there remained on hand and in said E. S. Robbins's possession on April 15, 1887, as the remnants of said calves and yearlings past purchased, and said calves and yearlings past mortgaged, and commingled as aforesaid, about 100 head; but whether any, and if any, how many, of said 100 head were the same stock mentioned and described in said mortgage cannot be ascertained. At least, most if not all of said 90 head of calves and of said 70 head of yearlings past had been sold and shipped and disposed of as aforesaid before April 15, 1887. Between January 13, 1887, and April 15, 1887, said E. S. Robbins purchased from time to time 93 head of cows, and turned and commingled them, as and when purchased, promiscuously among the 80 head of cows mentioned in said mortgage, and also from time to time sold and shipped out of said commingled lot of cows 38 head; and had remaining on hand and in his possession on said 15th day of April, 1887, 135 head of cows, but how many of said 135 head were the same cows mentioned and described in said mortgage cannot be ascertained or determined. Between January 13, 1887, and April 15, 1887, said E. S. Robbins traded off at least four head of the said '25 head of horses, mares and geldings of all

ages,' and at least four head of said '14 work mules, all ages,' and at least two of said '8 yearling colts.'

"3. On the 15th day of March, 1887, the said E. S. Robbins executed and delivered to said to said S. A. Brown & Co. his promissory note of that date for $525.50, at 90 days, with 12 per cent. interest per annum from its maturity, for money loaned by the said S. A. Brown & Co. to said E. S. Robbins; being the second note mentioned and copied in the answer of the defendants S. A. Brown, F. E. Parish, and T. W. Phelps; and to secure the payment of said notes said E. S. Robbins, on the 15th day of March, 1887, executed and delivered his chattel mortgage of that date, duly verified by affidavit thereon, to said S. A. Brown & Co., upon the following-described personal property, to wit: 1 mouse-colored jack, five years old, formerly owned by J. B. Stewart; 1 horse mule 7 years old, bay, weight about 1,000 pounds; 1 horse mule 7 years old, bay, weight about 1,000 pounds, mules formerly owned by J. Barrackman; being the second chattel mortgage mentioned in said answer, and the same chattel mortgage verified as aforesaid, of which 'Exhibit B' attached to said answer is a copy. Said mortgage was duly filed in the office of the register of deeds in Allen county, Kansas, and duly entered on the records of chattel mortgages, on the 16th day of March, 1887; that at the time said chattel mortgage was executed and delivered, all of the property described therein was the property of said E. S. Robbins, and was then in his possession and situated on his farm described in the foregoing first finding of fact, and was not owned by him on but purchased after January 13, 1887; and that subsequently to March 15, 1887 (of the precise time there is no evidence), said two horse mules were returned to and are now owned by said J. Barrackman; and said jack has been in possession of said S. A. Brown & Co. since January 2, 1888.

"4. On the 15th day of April, 1887, the said E. S. Robbins executed and delivered to said S. A. Brown & Co. his promissory note of that date for $3,500, at six months, with 12 per cent. interest per annum from its maturity, for money loaned by said S. A. Brown & Co. to said E. S. Robbins, being the third note mentioned and copied in the answer of the said defendants S. A. Brown, F. E. Parish, and T. W. Phelps; and to secure the payment of said note said E. S. Robbins, on the 15th day of April, 1887, executed and delivered his chattel mortgage of that date, duly verified by affidavit thereon, to

said S. A. Brown & Co. upon the following-described personal property, to wit: 8 mares and gelding (all ages) horses; 100 yearling steers and heifers, fat; 93 cows (all ages) and their increase, held on my farm about 3½ miles northeast of Humboldt; also, subject to first mortgage for $3,000 given January 12, 1887, the following, to wit: 25 head horses, mares and geldings, all ages; 8 yearling colts; 14 work mules, all ages; 90 head of yearlings; 80 head of cows (all ages) and their increase; 70 head of steers and heifers coming two years old, being the third chattel mortgage mentioned in said answer, and the same chattel mortgage verified as aforesaid, of which 'Exhibit C' attached to said answer is a copy. Said mortgage was duly filed in the office of the register of deeds in Allen county, Kansas, and duly entered on the records of chattel mortgages on the 16th' day of April, 1887. At the time said chattel mortgage was executed and delivered, on April 15, 1887, the said E. S. Robbins had in his possession on his said farm described in the foregoing first finding, and about 3½ miles northeast of Humboldt, Allen county, Kansas, and owned, (subject to such lien, if any, as then existed in favor of said S. A. Brown & Co. by virtue of the chattel mortgage mentioned in the foregoing second finding, on such portion thereof as was owned by said E. S. Robbins and located on said farm on the 13th day of January, 1887,) the following personal property, to wit: 31 head of horses, mares and geldings, of all ages; 8 yearling colts; 10 work mules, all ages; 135 cows, all ages; about 100 yearling steers and heifers, fat (but whether more or less than 100 did not appear from the evidence); 62 young calves, and no other stock of the horse, mule or cattle kind. Just what portion or how many head of the live stock owned by said E. S. Robbins, as aforesaid, on said 15th day of April, 1887, was the same stock mentioned in and covered by said mortgage mentioned in said second finding, the evidence does not disclose, and cannot be ascertained or determined; but at least 10 head of said horses, mares, and geldings, 2 yearling colts, and the larger number of said 135 head of cows, and most if not all of said yearling steers and heifers, fat, has been purchased and acquired by said E. S. Robbins after the execution of and were not included in said last-mentioned mortgage on January 13, 1887. There was not and never has been any mortgage given or dated January 12, 1887, on any of the property mentioned herein.

After the execution of said mortgage of the date of April 15, 1887, and from said date continuously until the execution of the mortgage hereinafter mentioned in the sixth finding, on July 23, 1887, the said E. S. Robbins, with the knowledge and consent of said S. A. Brown & Co., treated and dealt with all of said property on said farm on said 15th day of April, 1887, in all respects as his own, and from day to day exchanged portions thereof for other stock, and sold other portions thereof, and purchased other stock of the same general kind and character, and turned such purchased stock and said stock obtained by exchange as aforesaid among and mingled the same with what remained from time to time of said stock on said farm on said 15th day of April, 1887; and said E. S. Robbins commingled said stock promiscuously in such a manner and to such an extent that the identity of said stock on said farm on April 15, 1887, was lost; and said E. S. Robbins did continuously from April 15, 1887, to July 23, 1887, select out promiscuously from the aggregate lot or number of stock so commingled portions thereof, and shipped the same to Kansas City, Mo., and there sell them, and use and apply the proceeds of such sales to his own use and benefit. All of the foregoing was done with the full knowledge and consent of said S. A. Brown & Co.; and said E. S. Robbins did not account to said S. A. Brown & Co., nor did said Brown & Co. request or expect said E. S. Robbins to account to them, for said proceeds or any part thereof in any manner whatever. Just what portion of said stock on said farm April 15, 1887, remained on said farm and was owned by or in the possession of said E. S. Robbins on the 23d day of July, 1887, cannot be ascertained or determined.

"5. On the 21st day of June, 1887, the said E. S. Robbins executed and delivered to said S. A. Brown & Co. his promissory note of that date for $1,270.82, at 30 days, with 12 per cent. interest per annum from its maturity, for a valuable consideration paid by said S. A. Brown & Co. to said E. S. Robbins; being the fourth note mentioned and copied in the answer of defendants S. A. Brown, F. E. Parish, and T. W. Phelps; and to secure the payment of said note said E. S. Robbins, on the 21st day of June, 1887, executed and delivered his chattel mortgage of that date, duly verified by affidavit thereon, to said S. A. Brown & Co., upon the following personal property, to wit: 140 head of hogs, which now average about 225 pounds each; 1 dark bay mule eight years

old, 'Jack;' 1 dark bay mule nine years old, 'Pete' (mules known as Charles mules); being the fourth chattel mortgage mentioned in said answer, and the same chattel mortgage verified as aforesaid, of which 'Exhibit D' attached to said answer is a copy. Said mortgage was duly filed in the office of the register of deeds in Allen county, Kansas, and duly entered on the records of chattel mortgages on the — day of June, 1887. At the time said chattel mortgage was executed and delivered, on the 21st day of June, 1887, said E. S. Robbins owned, without any incumbrance, and had in his possession on his farm described in the foregoing first finding about and not exceeding 140 head of fat hogs of all ages, from small hogs or shoats up to a year or a year and a half old, and no other swine except a few small pigs; and also 2 dark bay mules, one eight years old, named 'Jack,' and the other nine years old, called 'Pete,' known as the 'Charles mules.'

"6. On the 23d day of July, 1887, said defendants E. S. Robbins and Mary J. Robbins executed and delivered to said plaintiffs, E. A. Barber & Co., their promissory note of that date for $4,000, at 90 days, with 12 per cent. interest per annum from its maturity, for money loaned by said E. A. Barber & Co. to said E. S. Robbins and Mary J. Robbins. A copy of said note is attached to the petition of said plaintiffs and marked 'Exhibit A.' And to secure the payment of said note, said E. S. Robbins, on the 23d day of July, 1887, executed and delivered his chattel mortgage of that date to said E. A. Barber & Co. upon the following-described personal property, to wit: 395 head of cattle, of all ages, from calves up; 250 head of hogs, of all ages; being the first chattel mortgage mentioned in said petition, and the same chattel mortgage of which 'Exhibit B' attached to said petition is a copy. Said mortgage was duly filed in the office of the register of deeds in Allen county, Kansas, and duly entered on the records of chattel mortgages on the 25th day of July, 1887, at 7:15 o'clock A. M. At the time said chattel mortgage was executed and delivered, on July 23, 1887, said E. S. Robbins owned and had in his possession on his farm described in the foregoing first finding of fact between 300 and 350 head of cattle of different ages, from calves up; and about 200 head of hogs of all sizes and ages, from suckling pigs up to 18 months old; the exact number of said cattle and hogs, or of either, the evidence does not disclose. Said cattle consisted of cows of various ages, and heifers and steers one and two years

old, and calves of various ages. There were no other cattle or hogs owned by said E. S. Robbins, or on said farm, on July 23, 1887. There is now due, with interest computed to July 6, 1888, to said E. A. Barber & Co. from said E. S. Robbins and Mary J. Robbins, on said note, the sum of $4,380. Said mortgage was taken and received in good faith by said E. A. Barber & Co., and without any actual notice or knowledge on their part that any person other than said E. S. Robbins had or claimed any interest in or lien upon any of said stock.

"7. On the 9th day of August, 1887, for the purpose of securing the payment of the note mentioned and described in the foregoing sixth finding of fact, said E. S. Robbins executed and delivered his chattel mortgage to said E. A. Barber & Co. upon the following personal property, to wit: 5 mules about 15½ hands high, bought of David Byrum, and known as the 'Byrum mules,' three and four years old; 20 head of mares, bought of George Millen, and known as the 'Millen mares,' branded on the left hip with a brand, and their increase for 1887, both colts foaled and to be foaled, also their increase for 1888; 4 head of mares, for which I traded with J. B. Charles, and known as the 'Charles mares,' and their increase for 1888; 3 head of yearling heifers, bought of Charles Baland; 1 yearling heifer, bought of J. M. Atwood; 1 steer calf, bought of N. Platt; 26 calves (steers and heifers), bought of S. J. Stewart during the spring and summer of 1887; 160 head of hogs, more or less, and their further increase, being all the hogs I now have on my place after deducting 140 head heretofore mortgaged to S. A. Brown & Co.; all my farming utensils and tools of every kind, character, and description, including wagons, buggies, carriages, plows, cultivators, harrows, rakes, mowing and reaping machines, stacking apparatus, and harness and tackle of all kinds; 5 head of thoroughbred short-horn bulls, from one to four years old; 1 large red cow, bought of J. H. Dayton, and known as the 'Wilcox cow,' and her calf for 1887, and also the calf she may have in 1888; 5 cows bought of D. P. Druning and their calves for 1887 and 1888; 1 cow bought of Doctor Henry; 14 head of colts foaled from my mares for the year 1887, and all the colts my mares may have for 1888; 8 head of 2-year-old colts coming three next spring, all geldings; 2 yearling (past) colts I got of Captain Whitaker, one a horse colt and one a mare colt; and all the calves calved by my cows prior to April 15, 1887;

being the second chattel mortgage mentioned in the petition of said plaintiffs, E. A. Barber & Co., and the same chattel mortgage of which 'Exhibit C' attached to said petition is a copy. Said mortgage was duly filed in the office of the register of deeds in Allen county, Kansas, and duly entered on the records of chattel mortgages on the 11th day of August, 1887. At the time said chattel mortgage was executed and delivered said E. S. Robbins had in his possession on his farm described in the foregoing first finding of fact and owned about 200 head of hogs, of all ages and sizes, subject to such lien as attached to 140 thereof by virtue of the mortgage mentioned in the foregoing fifth finding as executed on June 21, 1887, and subject also to such lien, if any, as attached to said 200 head of hogs by virtue of the mortgage mentioned in the foregoing sixth finding as executed July 23, 1887; (said 200 head of hogs were the same hogs and pigs mentioned in said sixth finding.) And also had in his possession on said farm and owned said 5 Byrum mules; 18 mares and 1 horse bought of George Millen, known as the 'Millen mares,' branded on the left hip with a brand; and 2 Texas colts, the increase of two of those mares for 1887; said 4 mares known as the 'Charles mares;' 1 steer calf bought of N. Platt; 1 steer calf bought of J. H. Atwood; 26 calves (steers and heifers) bought of S. J. Stewart during the spring and summer of 1887; 4 wagons; 4 mowers; 1 rake; 1 reaper; 5 cultivators; 7 plows; 3 harrows; 1 wheat drill; 1 corn planter; 1 stalk cutter; 2 buggies; 1 carriage; 6 set of harness; 5 thoroughbred short-horn bulls from one to four years old; 1 large red cow, bought of J. H. Dayton, and known as the 'Wilcox cow,' and her calf for 1887 (a red bull calf); 5 cows bought of D. P. Druning, and their 5 calves for 1887; 1 cow bought of Doctor Henry; 12 native colts foaled from said E. S. Robbins's mares, 1887; 7 two-year-old colts past, geldings; 2 yearling colts past, one a horse colt, and the other a mare colt, bought of Captain Whitaker; and 5 calves calved by said E. S. Robbins's cows prior to April 15, 1887. Since August 9, 1887, four more Texas colts have been foaled by said Millen mares. All of said cattle hereinbefore mentioned in this finding as being owned by and in possession of said E. S. Robbins on said farm on August 9, 1887, was owned by him and in his possession on said farm on July 23, 1887, and was included in and subject to the lien of said mortgage of July 23, 1887.

"8. On the 9th day of August, 1887, for the purpose of

further securing the payment of the note mentioned and described in the foregoing sixth finding, said E. S. Robbins executed and delivered his chattel mortgage to said E. A. Barber & Co. upon the following personal property, to wit: 8 mares and geldings, all ages (horses); 100 head of yearling steers and heifers, fat, 93 cows, all ages, and their increase, held on my farm 3½ miles northeast of Humboldt; also 25 head of horses, mares, and geldings, all ages; 8 yearling colts; 14 work mules, all ages; 90 head of yearlings; 80 head of cows, all ages, and their increase; 70 head of steers and heifers coming two years old; 1 jack and 2 mules; 2 mules known as the 'Charles mules,' one a dark bay eight years old, named 'Jack,' and one a dark brown nine years old, named 'Pete;' and 140 head of hogs, weight 225 lbs. each. Also all my feed, whether in the stack, mow, crib, bin, shock, or standing in the field, whether on my home place, or on the Stewart, Tibbets, Hillard, Amos and Turner places; being the third chattel mortgage mentioned in the petition of said plaintiffs, E. A. Barber & Co., and the same chattel mortgage of which 'Exhibit D' attached to said petition is a copy. Said mortgage was duly filed in the office of the register of deeds of Allen county, Kansas, and duly entered on the records of chattel mortgages on the 13th day of August, 1887, at 8 o'clock A. M. At the time said chattel mortgage was executed and delivered said E. S. Robbins had in his possession on his farm described in the foregoing first finding and owned about 200 head of hogs of all ages and sizes, being the same hogs and subject to the same liens as found and determined in the next preceding (seventh) finding; and also 1 jack, and 2 mules known as the 'Charles mules,' one a dark bay eight years old, named 'Jack,' and one a dark bay nine years old, named 'Pete,' subject to the lien of the mortgage mentioned in the foregoing fifth finding of fact as executed June 21, 1887; and also the following cattle, subject to the lien of the mortgage mentioned in the foregoing sixth finding of fact as executed on July 23, 1887, to wit: 120 head of cows; about 90 head of steers and heifers, one and two years old; and quite a number (the exact number cannot be determined from the evidence) of calves, the increase of said 120 cows; and also 7 work mules, in addition to the 5 Byrum mules mentioned in the foregoing seventh finding; 7 two-year-old colts; 10 yearling colts, including said Whitaker colts; and 1 horse and 43 mares, including the Millen horse and mares and Charles mares mentioned in the forego-

ing seventh finding; and there is nothing in said mortgage, of which said 'Exhibit D' attached to said petition is a copy, from which the particular 8 yearling colts, or the 8 mares and geldings, all ages (horses), or the 25 head of horses, mares and geldings (all ages), can be identified or determined. Whether or not the mules hereinbefore mentioned in this finding include the two Barrackman mules mentioned in the foregoing third finding, there is no evidence; neither is there any evidence as to the feed on hand August 9, 1887.

"9. On the 4th day of August, 1887, said E. S. Robbins executed and delivered to said S. A. Brown & Co. his promissory note of that date for $500, at five months, with 12 per cent. interest per annum from date, for money loaned by said S. A. Brown & Co. to said E. S. Robbins; being the fifth note mentioned and copied in the answer of said defendants S. A. Brown, F. E. Parrish, and T. W. Phelps; and to secure the payment of said note said E. S. Robbins, on the 4th day of August, 1887, executed and delivered his chattel mortgage of that date to said S. A. Brown & Co. upon the following personal property, to wit: All of the crops or hay, either on hand or grown and harvested on his home place, and on the farms of Stewart, Millard, Tibbets, and Amos—those are leased by me, E. S. Robbins; being the fifth chattel mortgage mentioned in said answer, and the same chattel mortgage, verified as aforesaid, of which 'Exhibit E' attached to said answer is a copy. Said mortgage was duly filed in the office of the register of deeds in Allen county, Kansas, and duly entered on the records of chattel mortgages on the 5th day of August, 1887, at 8 o'clock A. M. The evidence does not disclose what crops or hay was on hand and covered by said mortgage, but the exact quantity, whatever it was, was all consumed by said E. S. Robbins in feeding his stock before January 2, 1888.

"10. On the 4th day of August, 1887, the said E. S. Robbins executed and delivered his chattel mortgage to said S. A. Brown & Co. upon the following personal property, to wit: All of the crops and hay belonging to said first party, either growing or made and harvested, situated on said first party's home place, and the Stewart farm, the Tibbets farm, the Millard farm, the Amos farm; being the sixth chattel mortgage mentioned in the answer of said S. A. Brown, F. E. Parish, and T. W. Phelps, and the same chattel mortgage of which 'Exhibit F' attached to said answer is a copy. Said mortgage was duly filed and entered on the records of chattel

mortgages in the office of the register of deeds in Allen county, Kansas, on the 5th day of August, 1887, at 8 o'clock A. M. The evidence did not disclose the amounts or quantity of said crops or hay covered by said mortgage, but did disclose that, whatever that amount or quantity was, it was all consumed by said E. S. Robbins in feeding his stock prior to January 2, 1888.

"11. On the 9th day of January, 1888, said E. S. Robbins executed and delivered to said S. A. Brown & Co. his promissory note of that date for $400, at 90 days' time, with 12 per cent. interest per annum from date; being the sixth note mentioned and copied in the answer of said S. A. Brown, F. E. Parrish, and T. W. Phelps; and to secure the payment of said note said E. S. Robbins, on the 9th day of January, 1888, executed and delivered his chattel mortgage of that date to said S. A. Brown & Co. upon the following personal property, to wit: 1 stallion, 10 years old, blind in right eye, named 'Victor Hugo;' 1 stallion, sorrel stallion, 10 years old, blind in right eye, named 'Ned;' 2 bay mares, one eight years old and one 10 years old, named 'Mollie' and 'Sofie,' being the same I bought of Charles Englehardt; 1 sorrel mare, eight years old, bought of Ben. Turner, named 'Jule;' being the seventh chattel mortgage mentioned in said answer, and the same chattel mortgage of which 'Exhibit G' attached to said answer is a copy. Said mortgage was duly filed and entered on the records of mortgages in the office of the register of deeds in Allen county, Kansas, on the 9th day of January, 1888. At the time said chattel mortgage was executed and delivered, said E. S. Robbins had in his possession on his farm described in the foregoing first finding and owned all of the stock described in said last mortgage; but owned said stallion 10 years old, blind in right eye, named 'Victor Hugo;' 2 bay mares, one eight years old and one 10 years old, named 'Mollie' and 'Sofie,' being the same I bought of Charles Englehardt, subject to the lien of the mortgage mentioned in the twelfth finding of fact hereinafter as executed February 21, 1887; and owned said sorrel stallion 10 years old, blind in left eye, named 'Ned;' 1 sorrel mare eight years old, bought of Ben. Turner, named 'Jule,' subject to the lien of mortgage mentioned in the thirteenth finding of fact in this report as executed October 11, 1887.

"12. On the 21st day of February, 1887, the said E. S. Robbins executed and delivered his two promissory notes of

that date to one Paul Fisher, one for $170, at one year, with 10 per cent. interest per annum from date, and if not paid when due, interest to draw 12 per cent. interest per annum from maturity, and the other for $150, at eight months, with 10 per cent. interest per annum from date, and if not paid at maturity, interest to draw 12 per cent. from maturity; being the seventh and eighth notes mentioned and copied in the answer of said S. A. Brown, F. E. Parish, and T. W. Phelps; and to secure the payment of said two notes said E. S. Robbins executed and delivered his chattel mortgage, and dated on the 21st day of February, 1887, to said Paul Fisher, upon the following personal property, to wit: '1 dark bay stallion, nine years old this spring, blind in right eye, named 'Victor Hugo;' 2 bay mares known as the 'Englehardt mares;' being the eighth chattel mortgage mentioned in said answer, and the same chattel mortgage of which ' Exhibit H' attached to said answer is a copy. Said mortgage was duly filed and entered on the records of chattel mortgages in the office of the register of deeds in Allen county, Kansas, on the 2d day of March, 1887, at 11 o'clock A. M. At the time said chattel mortgage was executed and delivered, said E. S. Robbins owned and had in his possession on his farm described in the foregoing first finding of fact the personal property and stock mentioned and described in said mortgage, and said property was the only property of that description owned by or in possession of said E. S. Robbins. Before the commencement of this action said Fisher, for a valuable consideration, transferred said two notes and said mortgage to said S. A. Brown & Co., and they are the owners thereof.

"13. On the 11th day of October, 1887, said E. S. Robbins executed and delivered his promissory note of that date to one Paul Fisher for $105, at 30 days, with 12 per cent. interest per annum from date, and if not paid when due, interest to bear 12 per cent. from maturity; being the ninth note mentioned and copied in the answer of said S. A. Brown, F. E. Parish, and T. W. Phelps; and to secure the payment of said note said E. S. Robbins executed and delivered his chattel mortgage of that date to said Paul Fisher upon the following personal property, to wit: 1 sorrel stallion, age nine years, called 'Ned,' and 1 sorrel mare, age eight years, called 'Jule;' said team known as the 'Turner team;' being the ninth chattel mortgage mentioned in said answer, and the same chattel mortgage of which 'Exhibit F' attached to said answer is

a copy.   Said mortgage was duly filed and entered on the records of chattel mortgages in the office of the register of deeds of Allen county, Kansas, on the 13th day of October, 1887, at 8 o'clock A. M.   At the time said chattel mortgage was executed and delivered, said E. S. Robbins had in his possession on his farm described in the foregoing first finding of fact and owned all of the stock and property described in said mortgage, and said stock and personal property was the only stock and property of that description in possession of or owned by said E. S. Robbins at the time said mortgage was executed and delivered.   Before the commencement of this action said Fisher, for a valuable consideration, transferred said note and mortgage to said S. A. Brown & Co., and they have ever since said transfer been the owners thereof.

"14. On the 10th day of September, 1887, said E. A. Barber & Co., by written instrument of that date, released 125 head of hogs from the lien of the mortgage mentioned in the foregoing sixth finding, but what particular 125 head does not more definitely appear.

"15. On the 23d day of July, 1887, said E. S. Robbins had in his possession on his farm described in the foregoing first finding and owned 21 head of calves, the increase for 1887 of the cows mentioned in the mortgage executed April 15, 1887, as described in the foregoing fourth finding.

"16. On the 2d day of January, 1888, said S. A. Brown & Co., with the consent of said E. S. Robbins, took possession, under the chattel mortgages mentioned in the foregoing second, third, fourth and fifth findings, of the following-described personal property, and purchased of said E. S. Robbins, and kept, retained and applied the same as a payment upon the several notes and chattel mortgages mentioned in said second, third, fourth and fifth findings, at prices then agreed upon by and between said S. A. Brown & Co. and E. S. Robbins; and ever since said 2d day of January, 1888, said Brown & Co. have had, kept, and detained, and now have said personal property, to wit: 118 head of cows; 88 head of steers and heifers, most of which were, at the time, two years old past, and a few nearly two years old; 113 head of calves; 19 head of mares; 8 head of two-year-old colts (geldings); 9 head of yearling colts; 10 head of suckling (horse) colts; 2 head of suckling (mule) colts; 7 head of work mules; 1 jack; and 80 head of hogs and pigs of all ages.   Afterward, and between January 2, 1888, and the commencement of this action, said

Brown & Co., with the consent of said E. S. Robbins, took possession of the following personal property, to wit: 3 mares and 2 stallions, under the chattel mortgages set out and described in the foregoing eleventh, twelfth and thirteenth findings, and have kept them ever since. Said Brown & Co. removed from the farm described in the foregoing first finding all the stock and property hereinbefore mentioned in this finding between January 2, 1888, and the commencement of this action, and have kept and detained all of said property away from said farm ever since such removal. On the 2d day of January, 1888, the fair and reasonable market value upon said farm of said personal property was and ever since has been as follows, viz.: Said 118 cows, worth $13 per head; said 88 head of steers and heifers, worth $10.50 per head; said 113 calves, worth $6.50 per head; said 19 mares, worth $50 per head; said 8 two-year-old colts (geldings), worth $60 each; said 9 yearling colts, worth $35 per head; said 12 suckling colts, worth $25 per head; said 7 mules, worth $75 per head; and said 80 head of hogs and pigs were worth $500; said 3 head of mares, worth $50 per head; no evidence as to the value of said jack and 2 stallions. One of said stallions is the same mentioned in the mortgage of February 21, 1887, to Paul Fisher, described in the foregoing twelfth finding; and the other stallion is the same described and included in the mortgage of October 11, 1887, to Paul Fisher, mentioned in the foregoing thirteenth finding; and 2 of said 3 head of mares are the same mares described and included in said mortgage of February 21, 1887, to said Fisher; and the other of said 3 mares is the same described and included in said mortgage of October 11, 1887, to said Fisher; and said 3 head of mares and said 2 stallions are the same described and included in the chattel mortgage of January 9, 1888, mentioned in the foregoing eleventh finding; and said jack is the same described in the chattel mortgage of March 15, 1887, mentioned in the foregoing third finding; and 2 of said 7 head of work mules are the same included and described as the 'Charles mules' in the mortgage of June 21, 1887, mentioned in the foregoing fifth finding. All of said cows, steers, heifers and calves were the same cattle owned by and in possession of said E. S. Robbins on his said farm on July 23, 1887, as found in the foregoing sixth finding, except a few of said calves that were calved by said cows subsequently to July 23, 1887. Whether any of said 80 head of hogs and pigs are the same mentioned as

small pigs in the foregoing fifth finding cannot be determined from the evidence; but said 80 head are the residue of the lot of hogs on said farm June 21, 1887, and their increase since said time, and such portion of the said 80 head as were in life August 9, 1887, were on said farm on said 9th day of August, 1887. Said 7 head of work mules does not include the Barrackman mules mentioned in the foregoing third finding. With the exception of such of said 80 head of hogs and pigs as may have been pigged since August 9, 1887, if any, all of said stock was in said E. S. Robbins's possession on said farm on August 9, 1887, at the time of the execution and delivery of the two mortgages of that date hereinbefore mentioned in this report. But what portion of said property was owned by or in possession of said E. S. Robbins on said farm on January 13, 1887, or April 15, 1887, cannot be definitely determined. One of said 8 head of two-year-old colts (geldings) and one of said 9 head of yearling colts are the same 2 colts mentioned in the foregoing seventh finding as bought of Captain Whitaker; 21 head of said calves are the increase of said cows before April 15, 1887, and 92 head of said calves are the calves calved after April 15, 1887, by said cows owned by and in the possession of said E. S. Robbins on said farm July 23, 1887.

"17. Before the commencement of this action, and after the removal of the property mentioned, and as stated in the next preceding finding, said E. A. Barber & Co. demanded said property of and from said S. A. Brown & Co. under the chattel mortgages of which 'Exhibits B, C and D' attached to plaintiffs' petition are copies; but said S. A. Brown & Co. refused to return or deliver up said property or any of it to said E. A. Barber & Co.

"18. The written contract of which 'Exhibit A' attached to the answer of E. S. Robbins is a copy expresses all that said plaintiffs agreed or promised to do in consideration of the execution of the chattel mortgages on August 9, 1887, as found in the foregoing seventh and eighth findings; and there was no other or additional or different agreement, either written or verbal, entered into either before or at the time of their execution and delivery, as a consideration therefor, except as stated in said written contract and chattel mortgages. Said E. S. Robbins failed and neglected to comply with the terms, provisions and conditions of said written contract on his part required to be performed. The assignments of the policies of

insurance mentioned in said answer were not made, nor was the real-estate mortgage of which 'Exhibit B' attached to said answer is a copy executed or delivered under or in pursuance of said written contract; but said policies were assigned and said real-estate mortgage was executed and delivered under and in pursuance of another and different agreement, entered into by and between said E. S. Robbins and Mary J. Robbins and said E. A. Barber & Co., on September 10, 1887, and subsequently to the execution of said contract of which said 'Exhibit A' is a copy. As a part of said agreement of September 10, 1887, said E. A. Barber & Co. agreed to extend the time of payment of the $4,000 note sued on in this action, and also a large amount of other indebtedness then owing by said E. S. Robbins and Mary J. Robbins to said plaintiffs from time to time, not exceeding two years, upon certain conditions. Said plaintiffs did not at any time, either by said agreement or any other, waive or release their right under said chattel mortgages mentioned in the foregoing sixth, seventh and eighth findings to declare said note due and take possession of the property described in said mortgages at any time, according to the terms of said chattel mortgages. Said E. S. Robbins having sold, disposed of and parted with the possession of a large portion of the property covered by and described and included in said chattel mortgages, and having allowed and permitted said property to be taken and removed from his farm described in the foregoing first finding, the said plaintiffs had a right to and did deem themselves insecure on said note, and had a right to and did declare said note due before the commencement of this action, and had a right to take possession of said property. Said plaintiffs have not declared said indebtedness, other than said note, due; and the consideration for the execution of said chattel mortgages of August 9, 1887, and of said real-estate mortgage, and of said assigments of said policies, or any of them, has not failed.

"19. On the 2d day of January, 1888, said E. S. Robbins placed in the possession of the defendant L. Alderman, who was then engaged in feeding and caring for horses, cattle, and other live stock, the following personal property, being a portion of the same property described and included in the mortgages mentioned in the foregoing seventh and eighth findings as executed on August 9, 1887, to wit: 1 mule (Byrum mule); 1 horse (Millen horse); 18 (Millen) mares; 6 colts from said 18 mares; 5 thoroughbred short-horn bulls; 3 mares (known

35 — 47 KAS.

as the 'Charles mares'); 30 head of calves, and 9 head of cows, under a contract and agreement with said Alderman to be fed and cared for; and said Alderman has fed, kept and cared for said stock ever since said 2d day of January, 1888, under said contract and agreement, and still has possession thereof, except one of said 9 cows, which died in the spring of 1888, being the same cow described as the 'Wilcox cow' in the mortgage mentioned in the foregoing seventh finding. Said Alderman took care of and fed said stock from January 2, 1888, until April 1, 1888, and has pastured the same ever since April 1, 1888, and is still pasturing the same, except said cow known as the 'Wilcox cow,' and 4 of said mares which died some time in the spring of 1888 (the exact time did not definitely appear from the evidence). The feeding and keeping said stock as aforesaid from January 2, 1888, to April 1, 1888, was fairly and reasonably worth $1.40 per month per head for said mares, horses, mules, and cows; and 70 cents per month per head for said colts and calves; and $2 per month per head for said bulls; and the pasturing of said stock as aforesaid from April 1, 1888, to the date of the filing of this report, was and is fairly and reasonably worth 50 cents per head per month for said mares, horses, mules, cows, and bulls, and 25 cents per head per month for said colts and calves. There is now due from said E. S. Robbins to said Alderman for said feeding, keeping and pasturing to July 6, 1888, the sum of $320, and no part of said sum has been paid; nor has said sum nor any part thereof been tendered to said Alderman, either by said plaintiffs or any other person. Said stock hereinbefore mentioned in this finding is not, nor is any part of it, the same stock mentioned in the foregoing sixteenth finding as sold and delivered to said S. A. Brown & Co.

"20. Said L. Alderman performed such labor in feeding and taking care of the live stock mentioned in the foregoing seventeenth finding subsequently to January 2, 1888, at the request of said S. A. Brown & Co., but said labor was performed by said Alderman simply as the servant of said S. A. Brown & Co.

"21. All of the live stock sold and turned over to said S. A. Brown & Co. by said E. S. Robbins on January 2, 1888, as found in the sixteenth finding, was taken by said Brown & Co. at the aggregate agreed price of $5,800, or $5,900, and applied as a payment on the notes mentioned in the second, third, fourth and fifth findings. And said Brown & Co. also

paid the additional sum of $500 by assuming a liability of said E. S. Robbins of said amount; and, except as affected by the facts found in said sixteenth finding and hereinbefore in this finding, the amount of said four notes and the interest thereon is still a subsisting indebtedness from said E. S. Robbins to said Brown & Co. The three mares and two stallions turned over to said Brown & Co. subsequently to January 2, 1888, as found in said sixteenth finding, are held by said Brown & Co. under and by virtue of the chattel mortgages mentioned in the eleventh, twelfth and thirteenth findings; and, except as affected by the facts found in said three findings last mentioned, the three notes mentioned in said last three mentioned findings are still a subsisting indebtedness from said E. S. Robbins to said S. A. Brown & Co."

"CONCLUSIONS OF LAW.

"1. The chattel mortgage mentioned in the second finding of fact, being the mortgage of which 'Exhibit A' attached to the answer of S. A. Brown, F. E. Parish and T. W. Phelps is a copy, was before, on and during the 23d day of July, 1887, and ever since has been, and now is, void and invalid as to, against or affecting the said plaintiffs, E. A. Barber & Co., and was not on July 23, 1887, has not been since, and is not now, a lien upon any of the property mentioned in either the sixteenth or nineteenth finding of fact in this report, as against said plaintiffs.

"2. The chattel mortgage mentioned in the third finding of fact, being the mortgage of which 'Exhibit B' attached to the answer of said S. A. Brown, F. E. Parish and T. W. Phelps is a copy, is a good and valid and a first and best lien upon the live stock and personal property described in said mortgage, to secure the sum of $525.50, and 12 per cent. interest thereon per annum from June 13, 1887; and said S. A. Brown & Co. are rightfully in the possession of said live stock and personal property last mentioned.

"3. The chattel mortgage mentioned in the fourth finding of fact, being the mortgage of which 'Exhibit C' attached to the answer of said S. A. Brown, F. E. Parish and T. W. Phelps is a copy, was before, on and during the 23d day of July, 1887, and ever since has been, and now is, void and invalid as to, against or affecting the said plaintiffs, E. A. Barber & Co., and was not on July 23, 1887, and has not been since, and is not now, a lien upon any of the personal prop-

erty mentioned in either the sixteenth or nineteenth finding of fact in this report, as against said plaintiffs.

"4. The chattel mortgage mentioned in the fifth finding of fact, being the mortgage of which 'Exhibit D' attached to the answer of said S. A. Brown, F. E. Parish and T. W. Phelps is a copy, is a good and valid and the first and best lien upon the two mules known as the 'Charles mules,' and the 'about and not exceeding 140 head of fat hogs of all ages, from small hogs or shoats up to a year or a year and a half old,' mentioned in the fifth finding of fact in this report, to secure the sum of $1,270.82, and interest thereon from July 21, 1887, at 12 per cent. per annum.

"5. The note mentioned in the sixth finding of fact was due at the commencement of this action, and the plaintiffs, E. A. Barber & Co., are entitled to recover of and from the defendants E. S. Robbins and Mary J. Robbins on said note the sum of $4,380.

"6. The chattel mortgage mentioned in the sixth finding of fact, being the mortgage of which 'Exhibit B' attached to the petition of said plaintiffs, E. A. Barber & Co., is a copy, was on the 23d day of July, 1887, ever since has been, and now is, a good and valid and first and best lien upon all the cows, heifers, steers and calves mentioned in the said sixth finding, and also upon all the 'few small pigs' mentioned in the fifth finding of fact, inferior and subject to the mortgage mentioned in the said fifth finding of fact upon the '140 head of hogs, fat,' mentioned in said fifth finding of fact to secure the payment of the sum of $4,000, together with 12 per cent. interest per annum thereon from October 21, 1887; except, however, that the lien hereinbefore mentioned and found in favor of said plaintiffs in this conclusion of law is subject and inferior to the lien mentioned in the fifteenth conclusion of law in favor of defendant Alderman upon the live stock mentioned in the nineteenth finding of fact, as fed, kept and pastured by said Alderman, and so far as said live stock last mentioned is concerned. And plaintiffs are entitled to have the said chattel mortgage, of which said 'Exhibit B' attached to said petition is a copy, foreclosed.

"7. The chattel mortgage mentioned in the ninth finding is the first and best lien upon the crops and hay mentioned in said finding to secure the note described therein.

"8. The chattel mortgage mentioned in the seventh finding is the first lien upon all the mules, mares, the horses, colts,

and the increase of said mares, yearling colts, and two-year-old colts, the mowers, rake, reapers, cultivators, plows, harrows, drill, corn planter, stalk cutter, buggies, carriage, harness and wagons mentioned in said seventh finding; and a second lien upon all the cattle mentioned in the said seventh finding, and a second lien upon all the small pigs mentioned in the fifth finding that were a portion of the '200 head of hogs, of all sizes and ages,' mentioned in the sixth finding; and were also a portion of the '200 head of hogs, of all ages and sizes,' mentioned in the seventh finding; except, however, that the lien hereinbefore in this conclusion found in favor of the plaintiffs is also subject and inferior to the lien mentioned in the fifteenth conclusion in favor of defendant Alderman upon the live stock mentioned in the nineteenth finding of fact, and so far as said live stock last mentioned is concerned. And the plaintiffs are entitled to have said chattel mortgage last mentioned foreclosed.

"9. The chattel mortgage mentioned in the eighth finding is the second lien upon the jack and two mules known as the 'Charles mules,' and the five Byrum mules mentioned in the said eighth finding; and is the first lien upon the seven work mules mentioned in the said eighth finding; and is the third lien on all the cattle mentioned in said eighth finding, which are also mentioned in the seventh finding; and is also a second lien upon all the cattle mentioned in said eighth finding, which are not mentioned in said seventh finding; and is void as to the hogs, mares and geldings, horses and yearling colts mentioned in said eighth finding, except, however, that the lien hereinbefore in this conclusion found in favor of the plaintiffs is also subject and inferior to the lien mentioned in the fifteenth conclusion in favor of defendant Alderman upon the live stock mentioned in the nineteenth finding of fact. And the plaintiffs are entitled to have said chattel mortgage last mentioned foreclosed.

"10. The chattel mortgage mentioned in the tenth finding is the first lien (concurrent with the mortgage mentioned in the seventh conclusion) upon the crops and hay mentioned in said tenth finding to secure the debt mentioned in the mortgage described in said tenth finding.

"11. The chattel mortgage mentioned in the twelfth finding is the first and best lien upon the stallion and two mares mentioned in said twelfth finding to secure the debt mentioned therein.

"12. The chattel mortgage mentioned in the thirteenth finding is the first and best lien upon the stallion and mares described in said thirteenth finding to secure the debt mentioned therein.

"13. The chattel mortgage mentioned in the eleventh finding is a valid and second lien upon the 2 stallions and 3 mares described in said eleventh finding to secure the note mentioned therein.

"14. The defendants E. S. Robbins and Mary J. Robbins are not, nor is either of them, entitled to have the real-estate mortgage, or the chattel mortgages, or the assignments of the policies of insurance, or any or either of said instrumenet mentioned in the eighteenth finding cancelled or set aside.

"15. Said sum of $320 due said L. Alderman for feeding, keeping, caring for and pasturing the live stock, as stated and found in the nineteenth finding, is a valid and the first and best lien upon the live stock mentioned in said nineteenth finding, as placed in the possession of said Alderman by said E. S. Robbins on January 2, 1888.

"16. Said L. Alderman is not entitled to a lien upon any of the live stock or property mentioned in any of the findings in this report for his labor and services or any portion thereof done and performed as found in the twentieth finding.

"17. The possession of said S. A. Brown & Co. of the 118 head of cows; 83 head of steers and heifers; 113 head of calves; 8 head of two-year-old colts (geldings); 1 yearling (the Whitaker mare) colt; 10 suckling (horse) colts; 2 suckling (mule) colts; 5 head of work mules (not the Charles mules), as found and stated in the sixteenth finding, was on the 2d day of January, 1888, ever since has been, and now is, wrongful and unlawful, as against the said plaintiffs' right and lien, as found and stated in the sixth, seventh and eighth findings, and the fifth, sixth and seventh conclusions; and said plaintiffs are entitled to the possession of said property under their chattel mortgages of which 'Exhibits B, C, and D' attached to their petition are copies, and to a foreclosure of said mortgages and sale of said property, and to a judgment and decree against said S. A. Brown & Co. for the immediate possession of said property, or for the value thereof, as found and stated in the sixteenth finding, together with interest upon such value from February 9, 1888, the time of the commencement of this action; said judgment for the value, however, not to exceed the said sum of $4,380 found due said

plaintiffs in the sixth finding; and plaintiffs are entitled to a judgment against said S. A. Brown & Co. for the costs of this action.

"18. The defendants S. A. Brown & Co. are rightly in possession of the following personal property mentioned in the sixteenth finding, to wit: 19 head of mares, all of the 9 head of yearling colts, except the (Whitaker) mare colt, the 2 mules known as the 'Charles mules,' the jack, the 80 head of hogs and pigs of all ages, the 2 stallions, 2 (Englehardt) mares, and the (Turner) mare.

"19. The personal property mentioned and referred to in the fifteenth conclusion shall be by said Alderman delivered to the sheriff of Allen county, Kansas, and by said sheriff sold as upon execution, and the proceeds of such sale applied to the payment of, first, the amount found due said Alderman in the nineteenth finding; second, the costs of such sale; third, the remainder to the plaintiffs, on the amount found due them in the sixth finding.

"20. The wagons, mowers, rake, reaper, cultivators, plows, harrows, wheat drill, corn planter, stalk cutter, buggies, carriage and harness mentioned in the seventh finding shall be by said E. S. Robbins delivered to the sheriff of Allen county, Kansas, and by said sheriff sold as upon execution, and the proceeds of such sale applied to, first, the costs of such sale, and the remainder to the plaintiffs, upon the amount found due them in the sixth finding.

"21. The personal property mentioned and referred to in the seventeenth conclusion shall be by said S. A. Brown & Co. delivered to the sheriff of Allen county, and by said sheriff sold as on execution, and the proceeds of such sale be applied, first, to the payment of the costs of such sale; second, to the payment of the amount remaining due the plaintiffs on the amount due them as found in the sixth finding; third, to the payment of the costs of this action; and the remainder, if any, to said S. A. Brown & Co.

"22. If a sufficient amount be not received from the sales mentioned in the nineteenth, twentieth and twenty-first conclusions to satisfy the costs of such sales and of this action, and the amounts found due said Alderman and said plaintiffs as stated in the sixth and nineteenth findings, then execution shall issue to said sheriff to collect the residue of said costs of this action and amount due plaintiffs from the defendants E. S. Robbins, Mary J. Robbins, and S. A. Brown & Co.　And

in case of refusal or failure of said S. A. Brown & Co. to deliver the property or any portion thereof as stated and required in the twenty-first conclusion, execution shall issue against said Brown & Co. for the value (as found in the sixteenth finding) of such portions not delivered."

S. A. Brown & Co. filed a motion to have the referee set aside a portion of the findings of fact and conclusions of law, and to grant them a new trial. This motion was directed against the second, fourth, sixth and seventh findings of fact, and the first, third, sixth, eighth, ninth, seventeenth, twenty-first and twenty-second conclusions of law. This motion was also made by Robbins and wife and by Alderman. The motions were overruled by the referee. Similar motions were then made in the district court, and E. A. Barber & Co. filed a motion to confirm the report of the referee. On the hearing of these motions, the court overruled those of S. A. Brown & Co., Robbins and wife, and Alderman, and sustained the motion of E. A. Barber & Co., with some modifications. The final judgment is as follows:

"1. The court requires the plaintiffs to pay one-half of the fees and charges allowed the referee for his services herein, and the defendants S. A. Brown and F. E. Parish the other half of said referee's fees and charges.

"2. The court modifies so much of the twenty-second conclusion of law in said referee's report as follows: 'If a sufficient amount be not received from the sales mentioned in the nineteenth, twentieth and twenty-first conclusions to satisfy the costs of such sales and of this action, and the amounts found due said Alderman and said plaintiffs, as stated in the sixth and nineteenth findings, then execution shall issue to said sheriff to collect the residue of said costs of this action and amount due plaintiffs from the defendants E. S. Robbins, Mary J. Robbins, and S. A. Brown & Co. That portion of said conclusion is not allowed.' With said modification, the court orders and adjudges that the said report be and the same is hereby confirmed.

"And thereupon the court does consider, order and adjudge that the plaintiffs have and recover of the defendants E. S. Robbins and Mary J. Robbins the sum of $4,340, with interest thereon at the rate of 12 per cent. per annum from July

6, 1888, and costs of suit as hereinafter provided, less the one-half of the referee's fees taxed to plaintiffs.

"And it is further ordered and adjudged, that the plaintiffs have and recover of the defendant E. S. Robbins the posses-sion of 4 wagons, 4 mowers, 1 reaper, 5 cultivators, 7 plows, 3 harrows, 1 wheat drill, 1 corn planter, 1 stalk cutter, 2 bug-gies, 1 carriage, 6 sets harness; and that said E. S. Robbins is hereby ordered to deliver said property above described to the sheriff of Allen county, Kansas; and said sheriff is com-manded to sell the said property as upon execution; and it is further ordered that the proceeds be applied as follows: 1st. To the payment of the costs of making said sale. 2d. The remainder to be paid to the plaintiffs upon the judgment herein rendered in their favor against E. S. Robbins and Mary J. Robbins.

"It is further considered, ordered and adjudged, that the said L. Alderman was and is now entitled to the possession of the property mentioned and described in the nineteenth conclu-sion of law and nineteenth finding of fact in said referee's re-port, to wit: 1 (Byrum) mule; 1 (Millen) horse; 17 (Millen) mares; and 3 (Charles) mares; 6 colts from said Millen mares; 5 thoroughbred short-horn bulls; 30 head of calves, and 8 head of cows, under his claim for feed therefor; but the said Alderman is hereby required to turn over and deliver to the sheriff of Allen county, Kansas, all of said property, (except-ing such as have died since he took possession of them, to wit, 1 pony and 1 cow,) the same to be by the said sheriff sold as on execution; and it is ordered that the proceeds of such sale be applied as follows: 1st. The sum of $320 thereof to be paid to said L. Alderman in satisfaction of his claim for the care and feed of said stock, as found by the referee in the nine-teenth finding of fact and fifteenth conclusion of law. 2d. The remainder to be paid to the said plaintiffs on their judgment herein rendered against E. S. Robbins and Mary J. Robbins.

"It is further considered, ordered and adjudged, that the plaintiffs have and recover of the defendants S. A. Brown and F. E. Parish the possession of 118 cows, 88 head of steers and heifers, 113 calves, 8 head of two-year-old colts, 1 year-ling colt (the Whitaker colt), 10 suckling horse colts, 2 suck-ling mule colts, 5 head of work mules. And the said S. A. Brown and F. E. Parish are hereby ordered to deliver the said property above mentioned to the sheriff of Allen county, and said sheriff is ordered to sell the same as upon execution;

and it is further ordered that the proceeds of said sale be applied as follows: 1st. To the payment of the costs of making said sale and the costs of this action. 2d. To the payment of the amount remaining unpaid to the plaintiffs on the judgment rendered herein in their favor against E. S. Robbins and Mary J. Robbins. 3d. The remainder, if any, to be paid to the said S. A. Brown and F. E. Parish.

"In case of the refusal or failure of the said S. A. Brown and F. E. Parish to deliver said property to said sheriff, or in case a return of said property cannot be had, it is considered, ordered and adjudged that the plaintiffs do have and recover of said S. A. Brown and F. E. Parish the sum of $4,340, the value of said property, together with 7 per cent. interest per annum thereon from the 6th day of July, 1888, as found and stated by said referee; which judgment shall be satisfied by said S. A. Brown and F. E. Parish paying into court an amount of money sufficient to pay the plaintiffs the remainder due on their judgment against E. S. Robbins and Mary J. Robbins, after crediting the proceeds of the sales hereinbefore ordered.

"In case a part only of said property is delivered by said S. A. Brown and F. E. Parish to the sheriff of Allen county, as hereinbefore ordered, and a part or portion thereof be not delivered by them, and the proceeds arising from the sales of said portion delivered to said sheriff be not sufficient to pay said judgment in favor of said plaintiffs against E. S. Robbins and Mary J. Robbins, after applying the proceeds of the sales hereinbefore ordered, said judgment against S. A. Brown and F. E. Parish shall be satisfied by their paying into court a sum that will be, together with the application of the proceeds of said sales hereinbefore ordered, sufficient to pay said judgment of plaintiffs against said E. S. Robbins and Mary J. Robbins: *Provided, however,* Said sum shall not exceed in amount the value of said property not turned over, as found by the referee, together with 7 per cent. interest thereon from July 6, 1888. And in case of the failure of said S. A. Brown and F. E. Parish to pay said amount, then said plaintiffs shall have an execution against said S. A. Brown and F. E. Parish for the amount remaining due them on their said judgment against said E. S. Robbins and Mary J. Robbins: *Provided, however,* Said execution shall not be for a greater sum than the value of the property, as found by the referee, that

the said S. A. Brown and F. E. Parish may fail to turn over, together with 7 per cent. interest thereon from July 6, 1888.

"It is further ordered and adjudged by the court, that the referee be and is hereby allowed the sum of $301.25 for his services and expenses in this case. It is further ordered, that the plaintiffs pay one-half of said referee's fees, and judgment is hereby rendered against said plaintiffs for the sum of $150.68, and that the other half of said referee's fees and expenses of said referee be paid by said S. A. Brown and F. E. Parish, and judgment is hereby rendered against them for the sum of $150.67.

"It is further adjudged that the defendant Alderman recover of the plaintiffs his costs herein, taxed at $——; and it is further adjudged that the plaintiffs recover of the defendants S. A. Brown and F. E. Parish, partners as S. A. Brown & Co., their costs incurred in their suit against the defendants E. S. Robbins and Mary J. Robbins, taxed at $——; it being the true intent and meaning of this judgment, as regards the question of costs, that the defendants respectively shall be liable only for the costs incurred in the defense of their branch of the case."

S. A. Brown & Co. alone have brought the case here for review. Their first cause of complaint, stated in general terms, is, that certain findings of fact made by the referee are not sustained by any evidence, and they specially attack so much of the second finding, which holds that Robbins, with the knowledge and consent of S. A. Brown & Co., used the mortgaged property (referring to the mortgage of January 13) as his own, and disposed of it for his own benefit, so that the identity of the stock was lost and destroyed before the 23d day of July; that, between the 13th day of January and the 15th day of April, Robbins had disposed of 38 head of cows mentioned in said mortgage, and had purchased and mingled with the remainder 93 head of cows, and had remaining in his hands April 15, 135 head of cows, but how many of said 135 head were the same cows mentioned in said mortgage cannot be ascertained or determined; that, on the day following the execution of the mortgage of date January 13th, Robbins, with the knowledge and consent of S. A. Brown & Co., con-

tinued from said time until the execution of the mortgage of date July 23, 1887, to treat and deal with said mortgaged property as his own, etc. The construction given the latter part of the finding by counsel for plaintiffs in error is, that Robbins sold a part of the mortgaged property on the 14th day of January; but we think that the finding does not so state. The proper construction of the finding is, that from the day following its execution — the 13th of January — until the 23d day of July, Robbins continued to treat and deal with the mortgaged property as his own; not that he made a sale of any part of it on the 14th day of January. There is evidence to show that after January 13th, and until the 15th of April, Robbins had disposed of some of the property, and this is admitted by the plaintiffs in error in their brief. The general trend of the evidence and the facts proved is toward the conclusion that S. A. Brown & Co. permitted Robbins to do as he pleased with reference to the sale and disposition of the mortgaged property.

The objection to the fourth finding of fact goes to substantially the same point. In the sixteenth finding it is said, "that all of said cows, heifers, steers and a lot of calves that Brown & Co. got from Robbins were the same that Robbins had in his possession July 23, the date of Barber & Co.'s mortgage." It is claimed that this part of the finding is not supported by any evidence, but we find in the recorded evidence of Robbins himself, who was a hostile party and witness as against E. A. Barber & Co., repeated declarations that he was buying, selling and shipping indiscriminately, and that his only aim was to keep on hand a number corresponding to the number mortgaged; and he said with reference to a lot of calves, especially, that was covered by a mortgage of S. A. Brown & Co., and in response to a question about reserving calves for E. A. Barber & Co., why it was that they were not separated from the balance of these calves, he said it was impossible for him to pick out those identical calves.

In a word, and without going further into the details of a most voluminous record, it seems to us that the general course

of dealing between Robbins and S. A. Brown & Co., and Robbins's habit of buying, shipping and selling cattle at his own will and pleasure, shipping sometimes as often as three times per week; his invariable custom, as far as developed by the record, of mingling his recent purchases with the stock on hand that was covered by these mortgages; added to his positive statement that he did sell certain stock covered by these mortgages and then bought others, his idea being that if he had the number called for in the mortgages on hand it did not make any difference as to whether they were the identical cattle or not, all concur in supporting the special findings of the referee, against the attacks of the plaintiffs in error. All these objections were reviewed both by the referee and a painstaking and laborious district court, and they must be held here to be conclusive of the facts established, for this, in addition to the other reasons: The legal conclusion derived from these special findings of fact, which is now the subject of the contention of counsel for plaintiffs in error, is, that S. A. Brown & Co.'s mortgage of April 15th is no lien, and passed no title to the stock they got from Robbins on January 2, 1888, as against E. A. Barber & Co.'s mortgages. This legal conclusion is based upon the fact that after Robbins executed and delivered to S. A. Brown & Co. the mortgages of date January 13 and April 15, 1887, Robbins, with the knowledge and consent of S. A. Brown & Co., treated the property as his own, shipping parts of it at various times, constantly buying to add to it, and constantly selling parts of it, until the identity of the particular live stock mortgaged was absolutely destroyed, and never accounting to Brown & Co. for sales of it. This legal conclusion seems to be supported by cases decided by this court and other final tribunals. In the case of *Leser v. Glaser*, 32 Kas. 546, this citation from the 17th American Law Review, 350 *et seq.*, is approved:

"All cases in which a power of sale of the goods by the mortgagor is provided for are therefore to be tested by the question whether such sales are to be made in his own behalf, and at his own discretion, and with the control of the pro-

ceeds reserved to him? or whether they are to be made solely in pursuance of the trust as a real one, that is, for the benefit of the grantee or mortgagee, and with provision that the proceeds shall be applied on his debt."

This citation was subsequently approved by this court in the case of *Implement Co. v. Schultz*, 45 Kas. 52.

An examination of the mortgages of January 13 and April 15 shows that no power of sale is given to the mortgagor, but on the contrary it is expressly provided in both instruments that the mortgagor shall continue in peaceable possession of the goods and chattels, "and he engages that they shall be kept in as good condition as the same now are," but the findings of the referee set forth the acts of both the mortgagor and mortgagees respecting the manner of sales, the custody and management of the mortgaged property, and the disposition of the proceeds of the various sales made from time to time of parts of the property. In this case, as in that reported in the 45th Kansas, the proceeds of sale were used by Robbins, without special regard to the mortgage debts. They are alike in another respect, to wit: "The resident agent of the mortgagees knew the manner in which the business was being conducted, and never made any objection thereto." And it can be said in this case as in that:

"By these findings a case is presented in which the power of sale in the mortgagor is recognized and acquiesced in, and this power of sale, and the application of the proceeds of such daily sales, are made by the mortgagor on his own behalf, and at his own discretion, the proceeds being subject to his absolute control, and the sales are not made and the proceeds are not applied solely in pursuance of the object and purposes of the chattel mortgages for the benefit of the mortgagees."

The course of dealing pursued by Robbins, with the knowledge and acquiescence of the mortgagees, S. A. Brown & Co., permitted Robbins to have the same control over the property, to exercise the same right to sell it or trade it, and to make an application of the proceeds of sale, or to make a disposition of the property received in trade, as if the chattel mortgages had never been executed. It is not alleged that the chattel mort-

gages were of fraudulent origin; it may be that they were executed in good faith, but the subsequent conduct of both mortgagor and mortgagees now renders them obnoxious to the test of validity maintained by this court. By the course of dealing pursued by Robbins, with the knowledge and acquiescence of S. A. Brown & Co., the identity of the mortgaged property was changed, by buying and selling, by addition and subtraction, by mingling newly-purchased stock with those on hand at the time the mortgages were executed, until there was such a confusion of goods that Robbins himself, much less S. A. Brown & Co., could not point out the particular stock covered by their mortgages. We therefore conclude that the conclusions of law based on the findings of the referee are correct, and recommend that the judgment of the district court be affirmed.

By the Court: It is so ordered.

HORTON, C. J., and JOHNSTON, J., concurring.

VALENTINE, J.: I concur in affirming the judgment of the court below, but I still dissent from the decision of this court, and concur in the decision of the court below in the case of *Implement Co. v. Schultz,* 45 Kas. 52, 56, which is cited in this case seemingly as authority.

I. In that case the party in whose favor this court decided, and against whom the district court decided, was simply an *attaching creditor,* founding his claim to the property in controversy solely upon an *attachment* which could not be held to be good except upon the theory that *fraud* had been committed by the defendant in that action, while *in fact* no such fraud had been committed; while in this case there is *no attaching creditor nor any attachment,* and the party in whose favor the district court decided, and in whose favor this court now decides, *had and has the undoubted right to the property in controversy* unless the party against whom the district court decided, and against whom this court now decides, had and has a paramount right to the property by virue of certain chattel mortgages.

II. In that case there was mortgaged property *that could be identified beyond all question* ample and sufficient to pay all of the mortgage debt remaining due and unpaid, which property was converted into money by a receiver appointed by the district court; and the proceeds thereof were ample and sufficient to pay the remainder of the mortgage debt; while in the present case much of the mortgaged property was sold by the mortgagor, and similar property purchased by him, and so mingled with the remainder of the mortgaged property, if there were any remainder, that *the identity of the mortgaged property had become and was lost;* and therefore it could not possibly be used in paying the mortgage debt.

III. In that case, *fraud* had to exist to sustain the *attachments,* while in this case there are no attachments, and it can make no possible difference whether any fraud has at any time existed or not with regard to the mortgages of the party against whom the court below decided and against whom this court now decides, for such mortgages cannot be enforced, for the reason that the identity of the mortgaged property is lost. Of course, I concur in the case of *Leser v. Glaser*, 32 Kas. 546, cited in the foregoing opinion.