(March 5, 1890.)

## BARNETT v. KINNEY, SHERIFF.

[23 Pac. 922, 24 Pac. 624.]

VOLUNTARY ASSIGNMENT—ATTACHMENT—CONFLICT OF LAW—AT- TACHING CREDITOR.—A voluntary assignment of personal property, situated in the territory, by a citizen of a sister territory, made in the latter, in trust for all his creditors and with preferences, is not good as against a nonresident attaching creditor, the law of the territory where property is situated not allowing prefer- ences.

COMITY BETWEEN STATES.—A state is not bound to accept the transfer laws of another state affecting property located within its borders.

INSOLVENCY LAWS OF IDAHO.—In Idaho the insolvent's property must be disposed of for the benefit of all the creditors without prefer- ences or priority, and the law makes no distinction between resi- dents and nonresidents.

APPEAL from District Court, Alturas County.

Angel & Sullivan, for Appellant.

Before the judgment could be attacked, the findings must be set aside, because not justified by the evidence, and this could only be done on motion for a new trial. (*Reed v. Bernal*, 40 Cal. 628.) When a court draws erroneous conclusions of law from its findings of facts, it is a decision against law, for which a new trial should be granted. (*Simmons v. Hamilton*, 56 Cal. 493; *Martin v. Matfield*, 49 Cal. 42; *Knight v. Roche*, 56 Cal. 15.)

Kingsbury & McGowan and C. S. Varian, for Respondent.

There being no issue of facts, the facts being all conceded, the court could commit no error as to them, nor could there be a re-examination of what was never examined or even in issue. (*People v. Mullins*, 10 Cal. 19; *Funkenstein v. Elgutter*, 11 Cal. 328; *Rickey v. Superior Court*, 59 Cal. 662.) A motion for a new trial was not the proper way to inform the court as to the law, and that there can be no new trial granted where no issue of fact has been tried. (Stats., secs. 4438, 4439; 3 Estee's Pleading and Practice, sec. 4847; *Knight v. Roche*, 56

Cal. 17; *Martin v. Matfield,* 49 Cal. 43; *Quinn v. Smith,* 49 Cal. 166.)    A voluntary assignment, valid under the law of the domicile of the assignor, will convey personal property situate in another state, especially if there are no home creditors, and always if the assignee has taken possession. (*Hanford v. Paine,* 32 Vt. 442, 78 Am. Dec. 586, and note; *Speed v. May,* 17 Pa. St. 91, 55 Am. Dec. 540; *Law v. Mills* 18 Pa. St. 185; *In re Paige & Sexsmith Lumber Co.,* 31 Minn. 136, 16 N. W. 700; *Richardson v. Leavitt,* 1 La. Ann. 430, 45 Am. Dec. 90; *Johnson v. Sharp,* 31 Ohio St. 611, 27 Am. Rep. 529; *Forbes v. Scannell,* 13 Cal. 242; *Askew v. Bank,* 83 Mo. 366, 53 Am. Rep. 590; *Einer v. Beste,* 32 Mo. 240, 82 Am. Dec. 129; *Whipple v. Thayer,* 16 Pick. 25, 26 Am. Dec. 626; *Burlock v. Taylor,* 16 Pick. 335; *Daniels v. Willard,* 16 Pick. 36; *Todd v. Bucknam,* 11 Me. 41-44; *Smith v. Railroad Co.,* 23 Wis. 267; *Frazier v. Fredericks,* 24 N. J. L. 162; *Bentley v. Whittemore,* 19 N. J. Eq. 462, 97 Am. Dec. 671; *Atherton v. Ives,* 20 Fed. 894; *Butler v. Wendell,* 57 Mich. 62, 58 Am. Rep. 329, 23 N. W. 460; *Farrington v. Allen,* 6 R. I. 449; *Walters v. Whitlock,* 9 Fla. 87, 76 Am. Dec. 607; *Miller v. Kernaghan,* 56 Ga. 155; *Gregg v. Sloan,* 76 Va. 497; *Sanderson v. Bradford,* 10 N. H. 260; *Atwood v. Insurance Co.,* 14 Conn. 555; *Moore v. Willett,* 35 Barb. 663; *Hoyt v. Thompson,* 19 N. Y. 207; *Ockerman v. Cross,* 54 N. Y. 29; *Wilson v. Carson,* 12 Md. 54; *Baltimore etc. R. R. Co. v. Glenn,* 28 Md. 287, 92 Am. Dec. 688; *Harrison v. Farmers' Bank,* 9 W. Va. 424; *Dundas v. Bowler,* 3 McLean, 397, Fed. Cas. No. 4141.)

SWEET, J.—On the twenty-third day of November, 1887, M. H. Lipman, a citizen of Utah, doing business at Salt Lake City, made an assignment to plaintiff herein in trust for all his creditors.    The deed of assignment carried with it certain personal property situated in Hailey, Alturas county, Idaho territory, to wit, a stock of goods and merchandise.    It is admitted that at the time the assignment was made said Lipman was insolvent; that in all respects the assignment was made in conformity with the laws of Utah territory; and that, under said deed of assignment, the creditors of said assignor were divided into classes, certain classes being designated as preferred cred-

itors, and said assignee being instructed by said deed of assignment to observe said preferences in settling the liabilities of the assignor as fast as the sale of said merchandise enabled him to do so. On the twenty-fifth day of November, 1887, plaintiff, as said assignee, took possession of the said stock of goods situated in Hailey, in said Alturas county and Idaho territory, having first caused to be duly recorded in said county the said deed of assignment. On the following day, to wit, the twenty-sixth day of November, 1887, defendant herein, then the duly qualified and acting sheriff of said Alturas county, levied upon and took possession of said goods under and by virtue of a writ of attachment issued out of the district court of the second judicial district of Idaho territory, in and for said Alturas county, in an action wherein the St. Paul Knitting Works Company, a corporation, was plaintiff, and the said M. H. Lipman was defendant. On the twelfth day of December, 1889, plaintiff commenced an action in said court against the defendant herein for the recovery of the possession of said goods and chattels, or for the sum of $5,000, the value thereof, in case a delivery of the same could not be had. Plaintiff obtained judgment in the lower court, took possession of said goods, and thereupon proceeded to sell the same, realizing therefrom the sum of $4,000. Defendant appealed from said judgment, and the assignee now holds said sum of money subject to the final determination of this litigation. By a careful examination of the findings of the lower court, we find that the issues here presented are clearly and distinctly set forth. They are, in brief, to recapitulate, as follows: The assignor, at the time of making said assignment, was a nonresident of this territory. The assignment was made in strict conformity with the laws of Utah territory, of which he was a citizen. The attaching creditor was also a nonresident of Idaho, and it is conceded that said Lipman was justly indebted to said corporation in the sum of $1,992; that at the time the writ of attachment was levied the assignee was in possession of the goods; and that the deed of assignment had been duly recorded in said county; also that the defendant was the duly qualified and acting sheriff of said Alturas county.

The legal question involved is as follows: May a nonresident make an assignment, with preferences, of personal property situated in this territory, that will be valid as against a nonresident attaching creditor? And this question further involves the effect, first, of possession by the assignee when the attachment is levied; second, the rule of comity between the states; and, third, the effect of the attaching creditor being a resident or a nonresident of the territory. We premise a discussion of these questions with the remark that a decision by the United States supreme court is binding upon us, and that whenever any issue presented here has been clearly and distinctly settled by said court, we need look no further.

We will first take up the question of citizenship, and we submit it in this form: Will the courts of this territory concede to any of its citizens any rights or privileges under its attachment laws not extended to any citizen of the United States who is a nonresident of the territory? The attachment laws of this territory give no preferences as between resident and nonresident attaching creditors. Therefore, under the rule laid down in *Green v. Van Buskirk,* 7 Wall. 151, we must consider the matter settled. It is there held that the rights of the attaching creditor are not at all affected by the question of citizenship. In *Sheldon v. Blauvelt,* a case recently decided by the supreme court of South Carolina, reported in 29 S. C. 453, 7 S. E. 593, the same conclusion is reached. The statute of South Carolina with reference to assignments by insolvent debtors is the same, in effect, as are the provisions of our own statute, and the facts involved in the case just cited are precisely the same as those presented in the case at bar. Section 2, article 4 of the constitution reads as follows: "The citizens of each state shall be entitled to all privileges and immunities of citizens in the several states." We think that the decision before alluded to in 7 Wall., in which this article is construed as affecting the rights of nonresident citizens in cases similar to this, applies to the facts as they are here presented; and under that decision, as well as under *Sheldon v. Blauvelt* and the authorities therein cited, we must conclude that the nonresidence of the attaching creditor in this case could not in any manner prejudice his rights, and that he was entitled to the same privi-

leges that, under the same circumstances, would be accorded
to any citizen of Idaho.

In reaching this conclusion we are following what we con-
ceive to be the rule laid down by the supreme court of the
United States; and the wisdom of the principle thus enunciated
by our highest court is as unquestionable as its authority.
When once a citizen has been accepted by any court of the
United States as a suitor, it does not seem to be in accordance
either with the principles of justice, or with common fairness,
or with common honesty between man and man, to question
him as to the particular state in which he may reside, and then
give or refuse him what the court would deem to be justice if
the suitor were a citizen of our own state, but deny him this
supreme right if the fact is developed that he is a citizen of
another state. In *Atherton v. Ives,* 20 Fed. 897, the court fol-
lows this doctrine, and concludes a vigorous indorsement of
the principle in these words: "We think such a distinction
should never be drawn by a court, unless compelled to do so by
legislative will clearly expressed. It may be that the legisla-
ture of a state has the power to exercise such a 'patriarchal and
provident sovereignty,' but this court will not assume such as
the legislative will." In concluding our discussion of this prin-
ciple, we will say that the pointed declaration just quoted meets
with the hearty approval of this court, and in the absence of a
positive statutory enactment, we do not think the court jus-
tified in asking the citizen who seeks the beneficial protection
of its laws whence he came, with a view of administering the
law accordingly.

The principle of comity between states, or to what extent
laws governing the transfer of property in one state will be re-
spected by a sister state, is the next question to be considered.
The courts of the country have differed very much on this prop-
osition. Nevertheless, it is conceded by all that one state is
not bound to accept the transfer laws of another state affect-
ing property located within its borders. It is useless for us
to discuss the question. The rule is laid down for our guid-
ance by the supreme court of the United States in *Green v.
Van Buskirk,* 7 Wall. 151. The language of the court is as
follows: "And this principle of comity always yields when the

laws and policy of the state where the property is located has
prescribed a different rule of transfer with that of the state
where the owner lives." In *Atherton Co. v. Ives*, 20 Fed. 895,
896, the court also indorses this rule.

The only question remaining in this connection is, was the
assignment made by Lipman, under the laws of Utah territory,
contrary to a clearly expressed statute or to the settled policy
of this territory? We think it was contrary to both. Com-
mencing with section 5875, the statute designates how an in-
solvent debtor may proceed in this territory in proving his in-
solvency, and the necessary steps to be taken to complete the
transfer and sale of his property for the benefit of his cred-
itors. Under this act, an assignee, chosen by the creditors (and
let us remark that these creditors may be residents or nonres-
idents) is appointed by the court. The assignee thus ap-
pointed must dispose of the property of the insolvent for the
benefit of all the creditors, share and share alike, preferences
or priority being strictly forbidden. Section 5932 is as fol-
lows: "No assignment of any insolvent debtor otherwise than as
provided in this title is legal or binding on creditors." The
assignment made by Lipman was in direct conflict with the pro-
visions of this statute, and one of its most important provisions,
to wit, that which prohibits preferences. It was urged by the
respondent that, if this rule were applied to the case at bar, a
nonresident of Idaho doing business in the territory could not
make an assignment of property within the jurisdiction of the
territory. This may be true, but the resident insolvent is not
permitted under this law to prefer any creditor in this territory
over any creditor out of the territory; and we do not think a
nonresident insolvent, doing business in Idaho, ought to be per-
mitted to make an assignment giving preferences to nonresi-
dents of the territory over residents of the territory in which
he is doing business, and the laws of which he invokes to pro-
tect his property, and maintain for him the same rights and
privileges that are extended to any citizen of the territory. A
nonresident, being entitled to the same right under our law as
a citizen of the territory, may invoke the same principles.
While this point was urged by the respondent, we think it was
carried a little too far. The courts of this territory would,

we believe, respect the assignment of a nonresident doing business in Idaho, if made in accordance with its laws. In other words, if Mr. Lipman's assignment had been made for the benefit of all his creditors, share and share alike, we believe, under the principle of comity, it would have been respected, as it would not have been contrary to the laws or the policy of this territory. In holding that this assignment was invalid as against attaching creditors, we are following the rule already quoted, and feel bound so to do; yet we do not hesitate to say that the rule meets with our approval. Persons doing business with residents of this territory should know what laws govern the transfer of property. By having one uniform principle applicable alike to all property situated in this territory, whether of residents or nonresidents, every person doing business within the territory, and every nonresident doing business with persons residing in the territory, may know, before extending credit or locating property within the jurisdiction of our laws, what laws will govern the transfer of that property, whose rights may attach and how they may attach; and it gives to our business community a stability and character that we believe to be not only desirable, but almost necessary, to free and advantageous commercial intercourse with distant states lying to the east and to the west of us.

Before passing to a consideration of the next principle involved, we add the further suggestion that sheriffs and other officers of like character in the territory have a right to understand whether or not, in proceeding under our laws, and in accordance therewith, they are protected by them. In this case the sheriff proceeded regularly and in accordance with the laws of Idaho; yet he is subjected to a suit for damages, because he did not understand and proceed in accordance with the laws of Utah, or in pursuance of transactions executed in harmony with those laws, but in direct violation of our own.

Counsel for respondent urged with a great deal of strength and persistency the fact that plaintiff was in possession of the goods at the time of the seizure by defendant under the writ of attachment. It is also averred by counsel for respondent that defendant had actual notice of the contents of the deed of assignment, and the possession thereunder by plaintiff. This

point was urged with a great deal of ability, and numerous authorities cited relating, perhaps indirectly, thereto. It does not seem to be a serious question. It is entirely regulated by the statute. If we do not recognize the principle of comity, for the reasons before stated, we must proceed under our own statute. This statute declares in the most positive terms that any assignment made with preferences shall not be legal or binding as against creditors. This being true, of what effect was this possession under and by virtue of an assignment that was clearly invalid? The attaching creditor was under no obligations to respect it. Indeed, the law distinctly declares that it was not valid as to him, and hence the mere fact of his possession under an invalid instrument is not material. May a person violate the positive mandates of a statute, and then claim protection as against the complainant, because the latter knew of the former's violation of the law? Nor do we see that the question of a voluntary or an involuntary assignment is entitled to consideration in passing upon the merits of the issue involved. No general assignment can be made in this territory, voluntary or otherwise, giving preferences. Therefore, we do not see that the fact of this assignment having been voluntary on the part of Lipman has any bearing whatever on this case. We must conclude, therefore, that the court below erred in holding such assignment to be valid as against attaching creditors of the assignor, and the possession of the defendant under said writ of attachment to have been unlawful. Let the judgment be reversed, and the cause remanded to the lower court, with instructions to enter judgment for the defendant in accordance herewith.

BEATTY, C. J., Concurring.—Having been. of counsel between the same above-named parties in a cause, in the same lower court, but with a different attaching creditor, I desired to take no part herein further than to sit at the hearing. I have not participated with my associates in the discussion, but, they having reached opposite conclusions, the disagreeable duty rests upon me of breaking the deadlock, which, in following my convictions and what seems to me the weight of authority, I do, by concurring in the able opinion of Mr. Justice Sweet.

BERRY, J., Dissenting.—A part of the subject of the assignment in question was personal property in the territory of Idaho. The assignor lived at the time of its execution in Utah territory, where the assignment was made. It was a voluntary assignment in trust for the benefit of creditors, and is conceded to be valid under the laws of Utah territory. The assignee had gone into possession, and was in possession as such assignee, when the property was seized and taken from his possession by the sheriff of Alturas county, by virtue of a writ of attachment in favor of a creditor of the assignor, residing in the state of Minnesota, where the debt was contracted. The assignee brought replevin against the sheriff, and on the trial in the court below had judgment for the property. This appellant seeks to reverse that judgment. There is but one controlling question in the case, viz., whether that assignment, valid where it was made, should, under the statutes of this territory, be held to be operative here. Under our statute I think it is clearly valid and operative. The appellant rests upon section 5932 of the Revised Statutes of Idaho, which provides that "no assignment of any insolvent debtor other than as provided in this title is legal or binding on creditors." This is the closing section of title 12, page 677 of the statutes of Idaho. The act is headed "Proceedings in Insolvency." The general scope and apparent purpose of the whole title of fifty-eight sections is shown in its first section (5875) as follows: "Every insolvent debtor may, upon compliance with the provisions of this title, be discharged from his debts and liabilities." No stronger terms are needed to show that the parties thus to be favored are the citizens of Idaho; and certainly it was not designed to compel all persons contemplating assignment to reside here six months before doing so, or to compel, into our courts, citizens of other states and territories to get a discharge from their debts through insolvency proceedings. I do not believe that the revisers of our law, in 1887, had any design that Idaho should take upon her a task of that magnitude. Nor do I think there was any design to preclude parties out of this territory, who might have property in it, from making any assignment whatever for the benefit of their creditors without going through our courts in insolvency proceedings. Of course, to

hold that this act has any extraterritorial scope and meaning is practically to deny to a nonresident the right to make any assignment whatever of his property here for the benefit of creditors. The statement of the proposition seems to me to carry with it a most forcible denial of any such intent. It is not claimed but that a state or territorial legislature may do so if it desires; but the precedents are that it will not be presumed to have so intended unless its enactments to that effect shall be clear and unequivocal. (*Butler v. Wendell*, 57 Mich. 62, 58 Am. Rep. 329, 23 N. W. 460; *Ockerman v. Cross*, 54 N. Y. 29.)

In 1860 a statute was enacted in New York entitled "An act to secure to creditors just division of the estates of debtors who convey to assignees for the benefit of creditors." Such act forbade preferences. It provided how the assignment must be executed; that an inventory should be filed of the property assigned; assignee should give bonds, etc.—all substantially as provided in our act, but with a prohibition as to other assignments as strong as our own. An assignment was made by a debtor in Canada, valid according to the laws of Canada, but in no way complying with the requirements of the New York statute. Possession in New York had been taken by the assignee, whereupon a New York creditor (not, as in this case, a foreign creditor) attached it; but the court held the act to apply to domestic assignments only, and held the foreign assignment good. (*Ockerman v. Cross*, 54 N. Y. 29.) So in *Butler v. Wendell*, 57 Mich. 62, 58 Am. Rep. 329, 23 N. W. 460. So in *Train v. Kendall*, 137 Mass. 366. So, also, in *Rice v. Courtis*, 32 Vt. 460, 78 Am. Dec. 597. But we need go, I think, no further than to the internal evidences of the act to be convinced that it was not intended to apply to foreign assignments. In fact, the title provides, expressly, that the assignor must be a resident of the territory. The judgment in the court below should be affirmed.