THE STANDARD IMPLEMENT CO. v. C. H. SCHULTZ *et al.*

CHATTEL MORTGAGE, *Fraudulent as to Creditors of Mortgagors.* When neither by the terms of a chattel mortgage nor a contemporaneous oral agreement between the mortgagors and mortgagees of a stock of hardware goods, a power of sale, or of daily sales, is given to the mortgagors, but the mortgagors, with the knowledge and acquiescence of the mortgagees, had the same control over the stock of goods that they exercised before the execution of the chattel mortgage, made daily sales and applied the proceeds at their discretion, such a mortgage is, as a matter of law, fraudulent as to the creditors of the mortgagors.

*Error from Saline District Court.*

THE case is stated in the opinion.

*Garver & Bond,* for plaintiff in error.
*Lovitt & Norris,* for defendants in error.

Opinion by SIMPSON, C.: The Standard Implement Company commenced an action in the district court of Saline county against the firm T. C. Ritter and Co., and attached their stock of hardware. Schultz & Hosea, who claimed to have a chat-

tel mortgage on the stock, interpleaded, and claimed that their chattel mortgage was a first lien. A trial was had on the interplea, and the court made the following findings of fact and of law:

"FINDINGS OF FACT.

"On January 3, 1887, and for several months prior thereto, the defendants, T. C. Ritter and his wife, P. J. Ritter, were engaged in the hardware business in the name of T. C. Ritter & Co., in the city of Salina, Kansas.

"2. On said January 3, 1887, T. C. Ritter & Co., being indebted to Schultz & Hosea in the sum of $683.37, executed to them three notes for $——— each, due in 60, 90 and 120 days respectively, and to secure the same gave a chattel mortgage on their stock of hardware and the store fixtures. The mortgage provided for possession of the mortgaged property by the mortgagors until default in payment, or until the mortgagees deemed themselves insecure. There was no special agreement between the mortgagors and mortgagees as to selling the property. The mortgagees, Schultz & Hosea, resided at St. Joseph, Mo., and were represented by Smith George, of Salina, Kansas, who had the claim against T. C. Ritter & Co. for collection, and who attended to the taking of said notes and mortgage. George retained the notes for collection, and continued to represent Schultz & Hosea in the matter of this claim continuously up to the time of plaintiffs' attachment. The mortgage was filed in the office of the register of deeds of Saline county, Kansas, on January 4, 1887.

"3. In the month of February, 1887, T. C. Ritter & Co. removed from their then business location into a room in another block of the town, taking with them their goods and the store fixtures.

"4. The business, after the giving of the mortgage, was carried on the same as before, and goods were sold in the usual way, and other goods purchased from time to time and put into the stock; no separation was made of the new goods from those on hand when the mortgage was given, and no account kept showing the proceeds of sales of either class of goods. The proceeds of sales were used by Ritter & Co. as they saw fit—for the payment of general expenses and debts, and without special regard to this mortgage debt.

"5. Smith George was in the store of T. C. Ritter & Co. occasionally from and after January 3, 1887, knew the man-

ner in which the business was being conducted, and never made any objection thereto. Ritter & Co. were not asked to apply the proceeds of sales of the mortgaged goods on this debt, nor to keep any account thereof.

"6. Ritter & Co. paid to Smith George on said notes the following sums: On March 5, 1887, $50; March 16, 1887, $120; May 12, 1887, $60; May 25, 1887, $113.90; June 25, 1887, $100 — leaving a balance of $66 and interest due on the last note.

"7. T. C. Ritter & Co. continued in business until August 30, 1887, when they made a general assignment for creditors. At that time there was a general stock of hardware on hand, valued at two or three thousand dollars, but the evidence does not show what articles were in stock that were on hand when the mortgage was given, except the following: Thirteen stoves, one show-case, two counters, one scale, lot of shelving, ——————————, which were worth more than the sum yet due said mortgagees.

"8. In March, 1887, a half interest in the business of T. C. Ritter & Co. was sold to Henry Sturdevant, who continued in the firm to the end. Sturdevant paid in about $500 in money.

"9. The Standard Implement Company and other creditors began suits with attachments against Ritter & Co. on September, 1887, and levied on the stock of hardware. The legal and valid claims of such attaching creditors amounted to more than the total value of the stock. These goods were afterward sold by the receiver, and the proceeds are in his hands.

"10. The mortgagees, Schultz & Hosea, never had possession of any part of the mortgaged property."

"CONCLUSION OF LAW.

"The mortgage of Schultz & Hosea is a valid lien, and is entitled to preference over attachments of plaintiff."

The implement company moved for judgment on the findings of fact, and also made a motion for a new trial. Both motions were overruled. The case is here for review, the sole question being as to whether or not the mortgage is fraudulent as to creditors. Both sides cite and rely on the cases of *Frankhouser v. Ellett*, 22 Kas. 127, and authorities cited in that case; *Howard v. Rohlfing*, 36 id. 357; *Whitson v. Griffis*, 39 id. 211. To these may be added the case of

*Leser v. Glaser*, 32 Kas. 546. The true test of the validity of a chattel mortgage under such a similar circumstance is stated in the case last cited, and is as follows:

"All cases in which a power of sale of the goods by the mortgagor is provided for, are therefore to be tested by the questions, whether such sales are to be made in his own behalf and at his own discretion and with the control of the proceeds reserved to him; or whether they are to be made solely in pursuance of the trust as a real one, that is, for the benefit of the mortgagee, and with provision that the proceeds shall be applied on his debt."

The only stipulation in this chattel mortgage is that "the mortgagors shall retain possession of all of said described property, all of which they agree, in consideration of such possession, shall be kept in as good condition as it now is and taken care of at their sole expense." There is no stipulation about the manner of daily sale, or how the proceeds of daily sales shall be applied; in fact, the court states as a conclusion of fact in the second finding that there was no special agreement between the mortgagors and the mortgagees about selling the property. If the chattel mortgage gave no power to the mortgagors to sell, and if there was no express oral agreement between the mortgagors and the mortgagees about daily sales and the application of the proceeds, it is probable that the mortgage would be held good, but the findings of fact recite that "the business after the giving of the mortgage was carried on the same as before . . . ; the proceeds of sales were used by Ritter & Co. as they saw fit—for the payment of general expenses and debts, *and without special regard to this mortgage debt!*" "The resident agent of the mortgagees knew the manner in which the business was being conducted and never made any objection thereto." By these findings a case is presented in which the power of sale by the mortgagors is recognized and acquiesced in, and this power of sale and the application of the proceeds of such daily sales are made by the mortgagors on their own behalf, and at their own discretion, the proceeds being subject to their absolute control, and

the sales are not made and the proceeds applied solely in pursuance of the object and purposes of the chattel mortgage for the benefit of the mortgagees. In other words, by the course of dealing pursued by the debtor, with the knowledge and acquiescence of the mortgagors, the debtor had the same control over the property, exercised the same right to sell it, and to make an application of the proceeds of sale, as if the chattel mortgage had never been executed. The chattel mortgage could be used by the debtor as a shield against one class of creditors, while preferences could be given to others. While the mortgage may have been executed in good faith and with honest purposes, the subsequent action of both mortgagors and mortgagees renders it obnoxious to the test of validity as stated by this court in *Leser v. Glaser*, 32 Kas. 546. We think that as a matter of law the chattel mortgage was void as against creditors.

It is recommended that the judgment be reversed, and the case remanded, with instructions to enter judgment for the plaintiff in error upon the findings of fact.

By the Court: It is so ordered.

HORTON, C. J, and JOHNSTON, J., concurring.

VALENTINE, J.: It is difficult to say that the judgment of the court below should be reversed in this case. The contest is between two creditors of T. C. Ritter & Co., who were a firm of hardware merchants at Salina, and who were the defendants in the court below but who are not parties in this court. The plaintiff in error, The Standard Implement Company, a corporation of Illinois, which was plaintiff in the court below, was an attaching creditor of the defendants below, while the defendants in error, Schultz & Hosea, a copartnership firm, of St. Joseph, Missouri, and who were interpleaders in the court below, were mortgage creditors of the defendants. The grounds upon which the attachment was issued are not shown by the case as made and brought to this court by the plaintiff in error, but they were evidently merely allegations

of fraud; for no other possible grounds for the attachment can be imagined under the facts of this case; but it does not appear that any·fraud existed in the case, certainly not any fraud in fact or any actual fraud. The mortgage executed by T. C. Ritter & Co. to Schultz & Hosea was executed and recorded long before any attachment suit was commenced. It was valid upon its face; it was executed in good faith, and it does not appear that any fraud in fact or actual fraud ever existed in connection with the mortgage or in connection with any of the mortgaged property. The mortgagors were to have the possession of the mortgaged property until default or until the mortgagees deemed themselves insecure. By sufferance of an agent of the mortgagees, the mortgagors carried on their business after the execution of the mortgage the same as they had done before, and in doing so, sold some of the mortgaged property. The findings of fact of the court below show among other things that "The proceeds of sales were used by T. C. Ritter & Co. as they saw fit for the payment of general expenses and debts, and without special regard to this mortgage debt." The mortgage debt, however, was nearly all paid. It was originally $683.37, but the mortgagors, Ritter & Co., paid portions of this debt from time to time from the proceeds of said sales until they paid all the debt except $66 and a small amount of interest. How much of the proceeds of the sales of the mortgaged property was used in keeping up the stock or for paying expenses and debts other than the mortgaged debt is not shown. From anything appearing in the case it might have been $1 or $10 or $100 or any other sum greater or less, but all was done in good faith. All the proceeds were used in replenishing the stock and in paying debts and expenses, including the mortgage debt. Ritter & Co. did not use the proceeds as they saw fit, but only "as they saw fit for the payment of general expenses and debts;" and this under the eye of an agent of the mortgagees. No fraud in fact of any kind or in any degree or manner at any time intervened. Some stoves and furniture and fixtures covered by the mortgage were worth

more than enough to pay all the remainder of the mortgage debt, and none of these were sold by the mortgagors. All the property was afterward converted into money by a receiver. Upon the foregoing facts and others, the court below held that the mortgage was a valid lien upon the funds in the hands of the receiver for $66 and interest, and that the lien was prior to any supposed rights of the attaching creditor. The plaintiffs in error claim that this decision was erroneous, and ask for a reversal thereof by this court. It would seem that they rely largely upon the case of *Leser v. Glaser,* 32 Kas. 546, but that case is not in point, for in that case there was actual fraud, and the trial court upon that question found in favor of the attaching creditor and against the mortgagee, and this court simply affirmed the decision of the trial court. And in that case, in the opinion delivered by this court the following, among other language, was used:

"A chattel mortgage is not necessarily void because it contains a stipulation that the mortgagor may retain the possession of the mortgaged property, nor is it necessarily void because the parties have stipulated either in the mortgage or elsewhere that the mortgaged property may be sold by the mortgagor: provided, that all is done in good faith, and the proceeds of the sale or sales are to be used only for the purpose of paying the mortgagor's debts and the necessary expenses for keeping the property and in converting the same into money. . . . A chattel mortgage executed in good faith is always valid, unless void for some technical reason, and whether void or valid it will probably never support an attachment; while, on the other hand, a mortgage executed in bad faith, or to hinder, delay or defraud the mortgagor's creditors, is generally void, and will probably always sustain an attachment issued on the ground of such fraud. The fraud alone is sufficient to sustain the attachment without reference to the validity or invalidity of the mortgage." Pages 553, 554.

In the case of *Gay v. Bidwell,* 7 Mich. 519, 525, the supreme court of Michigan says:

"To hold that a merchant cannot mortgage his goods without closing his doors, would be to hold that no mortgage of a merchant's stock can be made at all."

See also Jones on Chattel Mortgages, §§ 424, 425, and the authorities there cited. See also *Frankhouser v. Ellett,* 22 Kas. 127; *Howard v. Rohlfing,* 36 id. 357; *Whitson v. Griffis,* 39 id. 211; *De Ford v. Nye,* 40 id. 665; *Hosea v. McClure,* 42 id. 403; *Arn v. Hoerseman,* 26 id. 413; *Randall v. Shaw,* 28 id. 419; *Tootle v. Coldwell,* 30 id. 125. The presumption, *prima facie,* is that the judgment of the court below is right, and I cannot say that sufficient appears in this case to show affirmatively that it is erroneous, or that it should be reversed. All presumptions from silence or absence on the part of the record or case brought to this court should be construed in favor of the judgment of the court below, and not against it.