JOSEPH LORIE v. J. J. ADAMS, *as Sheriff of Chautauqua County.*

1. INSTRUCTIONS, *to be Applicable.* The instructions given by a trial court should be applicable to the issues in the case and the facts disclosed upon the trial.

2. CONFLICTING EVIDENCE — *Jury — Court.* A trial court ought not, in its instructions to a jury, to intimate that any fact is established, where there is conflicting evidence concerning the same, the determination of which is the exclusive province of the jury.

3. CHATTEL MORTGAGE — *Validity as to Attaching Creditors — Erroneous Instruction.* Where the mortgagor is permitted to retain possession of a stock of mortgaged goods, and sell the same in the regular course of trade, without any agreement or understanding as to what shall be done with the proceeds, the chattel mortgage is void as against attaching creditors, although it is given to secure an actual existing indebtedness, and is properly filed for record; but if properly filed for record, then if, in a contest between the mortgagee and

attaching creditors, there is a conflict in the evidence whether the mortgagor was permitted to retain possession and sell the stock in the regular course of trade, without any understanding as to the proceeds of the sales, it is error to instruct the jury " that, as a matter of law, before the mortgagee can recover, he must satisfy you by a preponderance of the evidence that he took possession of the stock of goods after he recorded his mortgage."

### Error from Chautauqua District Court.

On the 11th day of August, 1888, *Joseph Lorie* commenced his action in replevin against *J. J. Adams,* sheriff of Chautauqua county, to recover a stock of merchandise of the alleged value of $2,000. The case was tried on the 23d day of November, 1889, before the court, with a jury. The jury returned a verdict for Adams, the sheriff, and assessed the value of his interest at $741.55. Lorie filed a motion for a new trial, which was overruled and excepted to. He claimed the property in controversy by virtue of a chattel mortgage given to him by Moritz Lorie, his brother, on the 28th day of July, 1888. Adams, the sheriff, claimed the property under three orders of attachment, levied thereon by him after that time at the instance of certain creditors, amounting, with costs, to about $740. At the time of the execution of the chattel mortgage to Joseph Lorie, Moritz Lorie, his brother, lived at Cedar Vale, in Chautauqua county, and had carried on merchandising there for several years. The court, among other things, instructed the jury as follows:

"Before any person will be entitled to claim property on a chattel mortgage within the state of Kansas, he must either take immediate possession of the property mortgaged, or he must cause his mortgage to be filed for record in the office of the register of deeds of this county, in case he leaves the property in possession of the mortgagor. In this case, the plaintiff claims that he caused this mortgage to be recorded in the office of the register of deeds of this county at the time he took it, and that, at the same time, he took possession of the stock of goods. As a matter of law, before he can recover, he must satisfy you by a preponderance of the evidence that he did take possession of this stock of goods after he recorded his mortgage. A mortgage made upon a stock of goods, which

leaves the mortgagor in possession to sell out and continue the business in the usual way, would be void under the law; so that plaintiff must satisfy you that he did, by himself, or some other person as his agent, take possession of the stock of goods and continue to hold possession in good faith before he will be entitled to recover in this case.    In order to take such possession as would entitle the plaintiff to recover, he must satisfy you by a preponderance of the evidence that he took possession of the stock of goods in some such way as would notify the people that there had been a change in the possession of such stock of goods.   .   .   .    The plaintiff would have no right to recover in this case, even though you should believe that there was a *bona fide* indebtedness, if you believe from the evidence the plaintiff was aiding his brother to hinder, delay or defraud his creditors.   .   .   .    In addition to what the court has said, a mortgage executed by one person to another person can be of no force and effect until it is delivered.    If I should make to one of you a mortgage on my horse and buggy at home, and never deliver it, you can claim no rights under it.    It is just as necessary that it be delivered to the person who is entitled to receive it, or to some person for him, as it is that the mortgage shall be executed in the first instance. So, in this case, before the plaintiff can receive any benefit under this mortgage, he must show that it was delivered to some person for his use and benefit.    It need not be delivered to him personally, but to some person representing him.    It must have been either delivered to him or some person authorized to take it for him in the transaction, and, if it was so delivered, it was sufficiently delivered.    A mortgage that is not delivered to the person entitled to receive it, or to some person authorized to receive it for him, is a mere voluntary mortgage, and of no validity."

*Joseph Lorie* excepted to the rulings of the court and to the judgment, and brings the case here.

*John W. Shartel,* for plaintiff in error:

The plaintiff in error complains of the charge itself, and insists that this charge, under the law and the evidence in the record, is erroneous, inapplicable, and throughout usurps and invades the province of the jury.

There was no issue whatever raised in this case by the evidence as to the delivery to the plaintiff of the mortgage in

controversy; and the instruction, in the elaborate manner in which it was given by the court, upon the question of delivery, being wholly inapplicable to the evidence, and also a misstatement of the law upon that question, was certainly prejudicial to the rights of the plaintiff, in directing the minds of the jury into a channel of inquiry not proper under the evidence.

The court also said to the jury:

"As a matter of law, before the plaintiff can recover, he must satisfy you by a preponderance of the evidence that he took possession of this stock of goods; he must satisfy you by a preponderance of the evidence that he did take possession of this stock of goods in some such way as would notify the people there that there had been a change in the possession of such stock of goods."

This was erroneous. The statute presumes possession when an instrument is filed for record, and if such is not the case, it is the duty of the adverse party to prove it. *Frankhouser v. Ellett,* 22 Kas. 127.

The court, in saying to the jury, as a matter of law, that the plaintiff must show that he had possession of this stock of goods, as well as all that is said in that connection, invades the province of the jury.

This charge also misstates the law upon participation of the mortgagor in the proceeds of sales of mortgaged goods. *Whitson v. Griffis,* 39 Kas. 211; *Cameron v. Marvin,* 26 id. 625; *Muse v. Lehman,* 30 id. 518; *Leser v. Glaser,* 32 id. 546.

The court misinstructed the jury upon the question of participation of the plaintiff in the knowledge of any fraudulent intent on the part of the mortgagor. *Tootle v. Coldwell,* 30 Kas. 125; *Kennedy v. Powell,* 34 id. 22; *Chapman v. Summerfield,* 36 id. 610; *Baughman v. Penn,* 33 id. 504; *Bailey v. Manufacturing Co.,* 32 id. 73.

*J. B. Ziegler,* for defendant in error:

We contend that the exception to the instructions of the court is not sufficiently explicit to be of any avail. See *Fleming v. Latham,* 48 Kas. 773; *Young v. Youngman,* 45 id. 65;

*Bailey v. Dodge,* 28 id. 72; *Fullenwider v. Ewing,* 25 id. 69; *Ryan v. Madden,* 46 id. 245; *Haak v. Struve,* 38 id. 326; *Bard v. Elston,* 31 id. 274, and cases cited; *The State v. Wilgus,* 32 id. 126, and cases cited. See, also, *Patrick Red Sandstone Co. v. Skoman,* 29 Pac. Rep. 21; *Meeker v. Gardella,* 23 id. 837; *Maling v. Crummey,* 31 id. 600.

Exceptions to instructions in a mass cannot be considered upon appeal. *Pitman v. Molesberry,* 49 Iowa, 339; *Reeves v. Harrington,* 52 N. W. Rep. 517; *Steffenson v. C. M. & St. P. Rly. Co.,* 53 id. 800; *Carroll v. Williston,* 46 id. 352.

The petition in error in this court does not complain of any specific error in the instructions of the trial court. The plaintiff in error made no request of the court for any particular or specific instructions to the jury; hence, there is no cause for complaint on such grounds.

It is fully established by the evidence that this mortgage was not given in good faith, to secure an actual, *bona fide* indebtedness, but that the real purpose of it was to keep property out of the hands of the other creditors of Moritz Lorie. Upon this feature of the case the plaintiff in error must fail for lack of sufficient evidence.

Plaintiff in error also failed to establish, by any sufficient evidence, that he had taken any possession of this property whatever under his mortgage. The evidence also failed to show that this mortgage was ever filed for record in the office of register of deeds of Chautauqua county, Kansas.

The court instructed the jury upon all the propositions that the plaintiff below attempted to establish by any evidence. Instructions given to a jury should be taken and considered together as an entirety. *Cain v. Wallace,* 46 Kas. 138; *C. B. U. P. Rld. Co. v. Andrews,* 41 id. 383; *Meibergen v. Smith,* 45 id. 405; *Lawder v. Henderson,* 36 id. 754.

The opinion of the court was delivered by

HORTON, C. J.: Upon the trial, the plaintiff took several exceptions. The more important concerned the instructions given to the jury. It appears from the testimony that Joseph

Lorie, the mortgagee, is the brother of Moritz Lorie, the mortgagor. The chattel mortgage was dated July 28, 1888, and was properly deposited for record with the register of deeds on the same day, at 2 o'clock P. M. At the date of the mortgage, Moritz Lorie resided at Cedar Vale, where for some years he had been engaged in merchandising. Joseph Lorie is very wealthy, and lives at Kansas City, Mo. At the date of the mortgage, he was with his family at the hot springs at Las Vegas, N. M. About that time he received notice from his brother Moritz that his creditors were pressing him, and he notified his brother Nathan Lorie, who also resides at Kansas City, Mo., of that fact, and asked him to go to Cedar Vale and look after his interest. After the mortgage was taken it was delivered to Nathan Lorie, who handed it to J. Milton, the attorney of Joseph Lorie. It was then filed for record. Milton claims that he immediately took possession of the stock of goods for Joseph Lorie; that he put Wm. McKeehan in charge thereof. When the chattel mortgage was executed the goods were at Cedar Vale, in Chautauqua county, and soon after they were taken to Elgin, in the same county. They were advertised and sold under the mortgage, Nathan Lorie buying the same for $1,175. It is claimed that they were afterward turned over to Bertha Lorie, the wife of Moritz Lorie. When the goods were levied upon under the orders of attachment, at the instance of the creditors of Moritz Lorie, on the 10th of August, 1888, Wm. McKeehan and Moritz Lorie were both in the store unpacking and arranging them.

The claim of the plaintiff is, that the chattel mortgage was executed and delivered in good faith, to secure an actual existing indebtedness of $2,000, upon a stock of goods worth about $1,200. Defendant, representing attaching creditors, insists that the chattel mortgage was given and accepted with the fraudulent purpose of hindering, defrauding and delaying the creditors of Moritz Lorie — not to secure $2,000 or any other debt. On the part of the defendant, it is urged that the exception to the instruction of the court was not suf-

ficiently explicit, and also, that the petition in error does not point out any specific error therein. Neither of these contentions is substantial.

After the court had concluded its instructions, the plaintiff excepted in the following language: "Whereupon the said plaintiff duly excepts to said charge and to each and every part thereof." While a general objection to the instructions of the court, without specifying wherein they are objectionable, is unavailing, yet this court has ruled that, "where the record of the exception reads as follows, to wit, 'To the giving of which instructions, and to each and every portion thereof, said defendant, by its counsel, then and there duly excepted,' the exception goes to each and every part of the charge separately." (*Railway Co. v. Nichols*, 9 Kas. 235; *Railroad Co. v. Retford*, 18 id. 245.)

The petition in error alleges that "the charge of the court to the jury was erroneous in many divers particulars, to the substantial prejudice of the rights of the plaintiff;" and in the brief the specific errors are pointed out and commented upon in great detail. We therefore have the instructions presented to us for examination. We think in many respects the instructions were misleading and erroneous. The mortgage was delivered and filed for record before the orders of

1. Instructions, to be applicable.

attachment were levied. There was no issue over the delivery of the mortgage, and the instructions of the court concerning the delivery were wholly inapplicable, and must have necessarily confused the minds of the jury as to the issues for their determination. (*Raper v. Blair*, 24 Kas. 374; *Railway Co. v. Peavey*, 29 id. 169.)

The instruction "that the plaintiff could not recover unless he satisfied the jury that he took possession of the stock of goods after he recorded his mortgage" was erroneous, because

2. Conflicting evidence— jury—court.

it assumed that, if he had not taken possession, the mortgage, although recorded, was of no validity. If, after the filing of the mortgage for record, Moritz Lorie, the mortgagor, had been permitted to

hold possession of the property, with the power to sell and dispose of the proceeds in the regular course of trade, and there was no understanding as to what should be done with the proceeds of the sales, then the court might have instructed the jury that such a mortgage would be void as against creditors. (*Leser v. Glaser*, 32 Kas. 546.) But the court seems to assume as a fact, in a part of its instructions, that such a mortgagor was in possession, and was also permitted to sell the mortgaged goods for his own benefit, in the regular course of trade, after the mortgage was filed. Upon no other ground could it have given the instructions concerning the possession of the goods. The evidence as to the possession

3. Chattel mortgage—validity as to attaching creditors—erroneous instruction.

of the goods at the time of the levy was conflicting, and the court had no right to assume before the jury that, if the plaintiff failed to take possession of the goods after he recorded his mortgage, it was invalid. (*Frankhouser v. Ellett*, 22 Kas. 127; *Cameron v. Marvin*, 26 id. 612; *Tootle v. Coldwell*, 30 id. 125.)

Again, a debtor in failing circumstances may execute a chattel mortgage to one of his creditors by way of preference, and deliver the same to him or his agent; and, if the chattel mortgage is accepted to secure an actual existing indebtedness, such mortgage, if properly recorded, or if possession is. taken thereunder before any levy on an attachment or execution, is valid. (*Tootle v. Coldwell*, 30 Kas. 125, and cases cited.) The giving of such a chattel mortgage, in accordance with the provisions of the statute, places the property of the debtor beyond the reach of his creditors, and, in the nature of things, hinders and delays them from the collection of their claims, because it appropriates the property embraced in the mortgage to satisfy the debt of the preferred creditor; but if the mortgage is given for a *bona fide* indebtedness and properly recorded, although it does hinder or delay other creditors, it is not thereby fraudulent or void.

The jury in this case retired on the 25th of November, 1889, and did not return their verdict until the afternoon of November 27. Evidently the instructions, (some of which

were contradictory, several misleading, and erroneous,) affected the substantial rights of the plaintiff.

The judgment of the district court will be reversed, and the cause remanded.

All the Justices concurring.