THE WILL T. LITTLE COMPANY, *a Corporation*, AND W. J. HORSFALL, *Cashier of Guthrie National Bank*, v. BURNHAM, HANNA, MUNGER & COMPANY.

1. CHATTEL MORTGAGE—*Validity of, Not Considered, When.*   A chattel mortgage was executed by the plaintiff in error, the Will T. Little company, to Horsfall to secure a debt due the Guthrie National bank.   Afterward possession was taken of the stock of goods by M., president of the bank.   A question arose upon the validity of the mortgage upon its face.   Upon the trial, after a jury was empanelled and testimony was taken, the case was withdrawn from the jury and submitted to the court.   The journal entry taken by the clerk of the court, the journal entry prepared by the attorneys and signed by the judge, and an amendment to the record before the same was settled and signed, all showed, that: "Both parties elect to submit the case to the court upon the question of the validity of the mortgage in question."   *Held:*   That the question as to whether possession was taken by M. in behalf of Guthrie National bank under a transfer by way of pledge, cannot, after such an agreement, be considered by this court.

2. SAME—*Instrument Void as to Creditors.*   The right having been reserved to the maker of a chattel mortgage of a stock of goods, wares and merchandise, to sell, "in the usual course of business, and apply the proceeds of such sale to pay the actual and necessary expenses of carrying on the business, and replace enough goods to keep the stock up to its present value."   The mortgage also provided that it was to "cover all goods, wares and merchandise thereafter bought for said store."   The power is thus reserved to the mortgagor to appropriate the surplus.   Such an instrument is itself fraudulent and void as to creditors, as a matter of law, irrespective of the question as to whether or not any fraud or fraudulent intent did, in fact, exist.

3. SAME—*Valid as Between Parties.*   But such a mortgage is good between the parties to it, and when the mortgagee has obtained possession of the mortgaged stock by the consent of and agreement with the mortgagor and has proceeded to exercise his rights over the property as provided by the mortgage to secure the payment of his debt, such mortgage is completely good as against creditors asserting their rights under liens acquired subsequent to such possession.

*Error from the District Court of Logan County.*

·*S. L. Overstreet* and *Saunderson & Thomas*, for plaintiffs in error.

*Green & Strang*, for defendants in error.

The opinion of the court was delivered by

McATEE, J.:   This was an action in replevin in the district court of Logan county, brought by the defendants in error, plaintiffs below, against the plaintiffs in error, to recover possession of a stock of merchandise located in the city of Guthrie, valued at $2,400.81, in which the plaintiffs claimed a special ownership in the property by virtue of a chattel mortgage, and caused a writ in replevin to issue, under which the sheriff of Logan county seized the goods in controversy, taking the same from the possession of the plaintiff in error, W. J. Horsfall, who, within the time allowed by law, gave a redelivery bond and held possession of the property, and afterward filed his answer in the cause, the same being a general denial.

On April 1, 1893, the plaintiff in error, the Will T. Little company, executed to the plaintiff in error, W. J. Horsfall, cashier of Guthrie National bank, a chattel mortgage upon the goods in controversy to secure an indebtedness of $1,400, evidenced by two promissory notes, one dated March 1, 1893, for the sum of $600, due 60 days after date, and the other dated March 28, 1893, for the sum of $800, due sixty days after date. The mortgage contained the following clause:

"This is to be a continuing mortgage on the stock of goods, with the right of maker thereof to sell in the usual course of business and apply the proceeds of such

sales to pay the actual and necessary expenses of carrying on the business, and replacing enough goods to keep the stock up to its present value. This mortgage is to cover all goods, wares or merchandise hereafter bought for said store."

This mortgage was taken by Horsfall to secure money of the Guthrie National bank, of which J. W. McNeal was president, and was filed and entered for record April 19, 1893.

Upon the twentieth day of April, 1893, Mr. McNeal, as president of the bank, went into possession of the goods described in the mortgage and held the same as the representative of the Guthrie National bank.

Immediately after the goods in controversy were delivered to the plaintiff in error, Horsfall, and to McNeal, for the bank, Will T. Little telegraphed Burnham, Hanna, Munger & company to send their adjuster, and soon thereafter a man named Zigler, attorney for the defendants in error, appeared and represented the defendants in error as their attorney; whereupon, on April 20, 1893, the Will T. Little company executed to the defendants in error a chattel mortgage upon the stock of goods in controversy to secure a purported indebtedness of $5,189.71, subject to the lien and possession of the Guthrie National bank for the sum of $1,400, which mortgage was delivered to Zigler and placed upon record, and Zigler went into possession of the goods, subject to the possession of J. W. McNeal, Horsfall and the Guthrie National bank.

Afterward, and on the twenty-seventh day of April, 1893, one C. W. Miller, another representative of defendants in error, received from the Will T. Little company a chattel mortgage upon the same stock of goods to secure the payment of a promissory note of even date therewith, for the sum of $2,264.71, payable to the order of the

defendants in error one day after date, which said mortgage was filed for record on the same day, and thereupon the said C. W. Miller, representing the defendants in error, released the mortgage theretofore taken by Zigler.

At the time that the second mortgage was taken by Miller for the defendants in error, Horsfall was in possession of the property for the Guthrie National bank.

The claim of the defendants in error to recover in this case is based upon the chattel mortgage taken April 27, 1893, and upon possession taken thereunder.

The case was tried before Hon. Henry W. Scott, judge of the district court, by special assignment for the trial of the cause, and a jury. Upon the trial, the mortgage to Horsfall was offered in evidence by the defendants, plaintiffs in error, objected to as void, and the court had sustained the objection, and thereafter a number of witnesses were introduced and their testimony taken, that they had obtained possession under that mortgage of the mortgaged stock at the solicitation and request of the mortgagor. After the taking of testimony was closed upon both sides, the case was argued by the attorneys, and during the argument the jury was discharged from further action in the case, and the court announced that he "would take the case from the jury and decide it upon legal questions, both parties to the cause having elected to submit the cause upon the question of the validity of the chattel mortgage in question given by the defendant, the Will T. Little company, to W. J. Horsfall, cashier, the question being one of law, only, and therefore being no question of fact for the jury to determine," and the court proceeded to take the same under consideration. The jury was thereupon discharged from further action in the case and judgment was deferred until May 12,

1894, when judgment was rendered in behalf of the defendants in error for the recovery of the property.

Error is assigned in this: That, (1) the court erred in withdrawing the case from the consideration of the jury, and (2) in admitting testimony on the part of the defendants in error, over the objection of the plaintiff, and (3) in ruling out evidence offered by the plaintiffs in error, and (4) in overruling the motion for a new trial, and (5) in rendering judgment for defendants.

Under these assignments of error, it is the contention of the plaintiffs in error: (1) That the mortgage given to Horsfall, as cashier, was a valid and subsisting lien upon the property taken in the action, and was not upon its face void in law; and (2) that even if the mortgage was invalid that a possession of the property taken in the action was acquired in the first place by the plaintiff in error, Horsfall, as cashier, and J. W. McNeal, as president, of the Guthrie National bank, by the voluntary surrender to them of the goods by Will T. Little, president of the plaintiff in error corporation, and that, if the possession under the mortgage was not good, yet, that the possession so acquired by the voluntary act of the Will T. Little company operated as a lein by way of pledge, separate and independent from the rights which the plaintiffs in error, Horsfall, as cashier, and the Guthrie National bank, claimed to·have acquired under and by reason of the chattel mortgage executed to them, and that this possession so acquired by way of pledge was of itself valid, sound and sufficient to ensure to the plaintiffs in error a primary lien thereupon which could not be affected by the invalidity of the chattel mortgage theretofore executed to them, if the chattel mortgage should be determined by this court to be invalid.

Upon this contention, it is to be said, that evidence was adduced in the case to show, in behalf of the plaintiffs in error, that the delivery of the goods to the plaintiffs, Horsfall, as cashier, and McNeal, as president, was a voluntary act of the Will T. Little company; and upon the other, evidence was also produced tending to show that possession of the goods by the said plaintiffs in error, Horsfall and McNeal, was under, by virtue of, and directly in pursuance of, the authority which they claimed to have by virtue of the chattel mortgage, and not otherwise.

It was testified to by Mr. McNeal, when called as a witness in the case, that, when possession was taken by him for the Guthrie National bank:

"I went to Hunter, who had the keys, and announced that I took possession of the stock of goods, and put Hunter in possession for the bank, and put a notice on the door of the store that the store was closed under mortgage to the Guthrie National bank."

The original notices which were posted upon the door of the store were given in testimony and accompany the case-made. They are two in number, and each read as follows:

"Closed by Guthrie National bank under chattel mortgage."

The property was thereafter sold by Horsfall, as the cashier of the Guthrie National bank, and a copy of the notice of mortgagee's sale, after giving the date of the sale, and describing the property, the notice provides that:

"The above described property is taken as the personal property of the Will T. Little company under and by virtue of a certain chattel mortgage executed by the Will T. Little company to W. J. Horsfall, cashier of Guthrie National bank, which said mortgage bears date of April

1, 1893, and was executed to secure the sum of fourteen hundred dollars, as evidenced by two certain promissory notes, one for six hundred dollars, dated March 7, 1893, due sixty days after date; and one for eight hundred dollars, dated March 28, 1893, and due sixty days after date."

And further provides that the "mortgaged property is disposed of and the proceeds will be applied in payment of said mortgage indebtedness, expenses and costs of foreclosure,"  *   *

The journal entry of the trial taken at the time by the clerk of the court and certified to by him as a true and correct copy of journal entry of the trial of the cause, as the same was taken at the trial by him, states that after "the calling of the trial, and the announcement that the parties were ready for trial, and the statement that the jury was duly empanelled and sworn to try the case, and that the following witnesses were duly sworn to testify on behalf of plaintiff:  *   * and  *   *  on behalf of defendants," and after stating that defendant rests and plaintiff introduced testimony in rebuttal, states, as a part of the further proceedings of the court that: "The jury is now discharged from further action in this cause and the court defers judgment until May 12, 1894, both parties elect to submit the case upon the question of the validity of the mortgage in question;" and the judgment entry of the court, signed by the judge before whom the cause was tried, states that: "The court thereupon discharged the jury from the further consideration of the evidence in the case, and the question to be settled was the validity of the chattel mortgage brought in evidence by the defendant, it was thereupon agreed by the parties that the case should be submitted to the court upon the validity of said mortgage."

19—v.

Afterwards, and upon the settlement of the case, an amendment to the record was suggested by the defendant in error and allowed by the court to be inserted in the record, which states that:

"Both parties elected to submit the case upon the question of the validity of the chattel mortgage in question, given by the defendant, the Will T. Little company, to W. J. Horsfall, cashier of the Guthrie National bank; the question being one of law only, and there being no question of fact for the jury to determine, the jury is discharged from the further consideration of the case."

If it were left to this court to determine the preponderance of the evidence, we should have no doubt in determining the law to be against the acquisition of any right in behalf of plaintiff in error, the Guthrie National bank, to claim possession of the stock of goods by virtue of the contract of pledge, upon the facts in the case, independent of, and separate and distinct from, the claims set up by it under the chattel mortgage, but this question of fact and claim of legal right, was surrendered in behalf of the plaintiffs in error when it was agreed by the parties that the case should be submitted to the court on the validity of the mortgage, and when "both parties elected to submit the cause upon the validity of the mortgage in question."

If the validity of the mortgage upon its face and measured by its terms was the simple question brought here for our consideration we should have no difficulty in determining it. It provides in terms, that it shall be (1) a continuing mortgage, and (2) with the right of the maker thereof to sell in the usual course of business, and (3) to apply the proceeds of such sales to pay the actual and necessary expenses of carrying on the

business, and (4) to replace enough goods to keep the stock up to its present value.

The mortgage was given upon the first day of April, 1893, to secure promissory notes dated respectively March 1 and March 28, payable sixty days after date, due upon the twenty-ninth day of April to the first day of May, and the twenty-first to the thirtieth days of May, respectively, of 1893.

There is no intimation in the mortgage that the maker thereof made any engagement to make any appropriation of the proceeds of the mortgaged stock to the payment of the debt then described as due to the mortgagee, until the days, respectively, last mentioned; nor is there any intimation or provision therein that any such payments would be required by the mortgagee.

The power being given to the maker of the mortgage to sell in the usual course of business and apply the proceeds of such sales to pay the actual and necessary expenses of carrying on the business, and replace enough goods to keep the stock up to its present value, what was to become of the proceeds of sales after the payment of expenses and replacing stock, during the period from the time of the making the mortgage, April 1, 1893, up to the time of the maturity of the notes, upon May 1 and 30, respectively?

There is no answer to this but that it leaves these proceeds to be disposed of as the maker of the mortgage saw fit. During that period, if the mortgage was valid and effective, the mortgagor was left at liberty, according to this stipulation, to convert his stock into money and appropriate the proceeds thereof to his own use, if the mortgagee conceded this privilege, and the mortgage would then be effective as a protection of the property

of the mortgagor against the claims of other creditors, while the mortgagee derived no benefit therefrom.

If this could be sustained, the mortgagee could simply use his mortgage as a protection or shield over the mortgagor, while the latter "continued" to replenish his stock of goods "in the usual course of business," and after "applying the proceeds of sales to the payment of actual and necessary expenses and replacing stock," to appropriate the balance of the proceeds to his own use.

Possession having been here left to the mortgagor, with the privilege of appropriating, according to the terms of the mortgage, a part of the property to his own use, his possession was his own possession, and not that of the mortgagee.

The intention of the parties may have been absolutely fair and honest. The mortgagee may have believed that his mortgagor would appropriate the proceeds to the payment of the mortgage debt; the mortgagor may have honestly intended to do so. But the mortgage was void, as a matter of law.

The conclusion here arrived at is not based upon what the parties may have intended to do, but is based upon what the mortgage does, in fact, concede to the mortgagor the privilege to do. The privileges of possession and appropriation are there provided for, for the benefit of the mortgagor by the terms of the mortgage, and if such an instrument and conveyance could be sustained it would be at the option and within the power of the mortgagor and mortgagee to enable a fraud to be perpetrated upon creditors, and to enable the mortgagor to convert the property into money, and apply it to his own use, fraudulently, while the mortgage served to protect the property included in it, from the claims of other creditors.

Such a privilege is against the policy of the law, and wherever stocks of merchandise have thus been mortgaged and the privilege of appropriation by the mortgagor to his own use have been thus permitted by the terms of the mortgage, the decisions of the courts of this country have condemned them with almost entire unanimity, and the instrument itself has been as uniformly held to be fraudulent and void as a matter of law, irrespective of the question as to whether any fraud or fraudulent intent did, in fact, exist. (*Means v. Dodd*, 128 U. S. Rep. 281; *Implement Co. v. Schultz*, 45 Kan. 52; *Robinson v. Elliott*, 22 Wall. 523; *Loric v. Adams*, 51 Kan. 692; *Blackesley v. Rowsman*, 43 Wis. 116; *Fallen v. Ellison*, 3 Neb. 63; *Barnett v. Kinney*, 23 Pac. Rep. 922, [Ida.]; *Lang v. Lee*, 3 Rand. 410, [Va.]; *Hubbell v. Allen*, 90 Mo. 574; *Looker v. Peckwell*, 38 N. J. L. 253).

But it is contended by the plaintiffs in error that, in taking the case away from the jury and in undertaking to decide it upon legal questions, the court erred in considering only the validity of the mortgage, executed to Horsfall, upon its face and apart from the fact of possession, which was produced in evidence.

In as much as the motion for a new trial declared, (1) that "the finding and decision of the court in the cause is not sustained by sufficient evidence," and (3) that "the finding and decision of the court is contrary to the evidence and law," and (4) that "in sustaining the plaintiff's objection to the introduction of the mortgage given by the Will T. Little company to Horsfall, offered in evidence by the defendant, and for excluding the same;" and in as much as it is assigned for error here that (3) "the court erred in ruling out evidence and testimony offered by these plaintiffs in error on the trial of

this cause, to which plaintiffs in error at the time duly excepted," and (4) "the court erred in overruling the motion of this plaintiff in error, W. J. Horsfall, cashier of the Guthrie National bank, for a new trial," this point is properly raised for the consideration of this court.

Little, the plaintiff in error, testified that .he was the "president of the company that signed a mortgage to W. J. Horsfall, and also to the plaintiffs in this action, and that he had turned over the stock of goods to McNeal, president of the Guthrie National bank, and that he afterward gave a mortgage to Burnham, Hanna, Munger & Co."

McNeal testified that he "was president of the Guthrie National bank, and that about the twentieth day of April, Ltttle, being sick at home, sent for him; that he went down to see him, and that Little then stated to him that he had concluded that he was unable to pay his debts, wanted him to take possession of the goods, and if anything else was left to turn it over to Burnham, Hanna, Munger & Co.

Miller, the agent of the defendant in error, also testified that Little told him that "he could not turn the stock over to me because the Guthrie National bank had demanded the stock." There was no evidence contradicting this testimony.

At the time the cause·was taken from the jury it, therefore, stood as an undisputed fact in the record that prior to the execution of the mortgage to Burnham, Hanna, Munger & Co., the plaintiff in error was in possession of the stock of goods by the agreement of the mortgagor. While the mortgage to Horsfall was, taken alone and "upon its face" void, yet, the law is, that, notwithstanding its invalidity, it was yet good as between the mortgagor

and the mortgagee, and was valid as to all creditors obtaining leins upon it subsequently to the time at which the mortgagees took actual possession under their mortgage. While the mortgage would have been void as to creditors attaching, or in execution prior to the time at which the bank took possession, yet the mortgage was good as between the parties to it, and when the plaintiffs in error had obtained possession by the consent of the mortgagor, and had proceeded to the appropriation of the goods to the payment of the debts due to the Guthrie National bank, according to the terms of the mortgage, it was so completely good as against creditors asserting their rights under leins acquired subsequent to such possession.

*Brown & Co. v. Webb*, 20 Ohio, 390, where it is said that "a mortgage of personal property where the mortgagor retains possession by virtue of the mortgage, with a power of sale, is void, as against subsequent purchasers, and execution creditors, but when possession is taken by the mortgagee, the mortgage becomes valid so as to protect the mortgaged property from execution creditors not having made a levy, and against subsequent purchasers from the mortgagor." (*Nash v. Norment*, 5 Mo. App. 545; *Eastman v. Water Power Co.*, 24 Minn. 437; *Chapman v. Weimer et al.*, 41 Oh. St. 481; *McTaggart v. Rose*, 14 Ind. 230; *Dayton v. Savings Bank*, 23 Kan. 299; *Savings Bank v. Sargent*, 20 Kan. 576; *Cameron, Hull & Co. v. Marvin*, 26 Kan. 626).

In the latter case the supreme court of Kansas, all the justices concurring, adopts the statement of the law upon the point as contained in Jones on Chattel Mortgages, § 178, as follows:

"If a mortgagee takes possession of the mortgaged chattels before any other right or lien attaches, his title

under the mortgage is good against everybody, although it be not acknowledged and recorded, or the record be ineffectual by reason of any irregularity. The subsequent delivery cures all such defects. Delivery of possession under a mortgage before rights have been acquired by others, will cure any invalidity there may be in the instrument, or from its containing a provision which makes it void except as between the parties."

And the supreme court of Kansas, in the last named case, declare that, "this statement of the law is undoubtedly in accordance with the great weight of authority."

This is an action in replevin, in which the gist of the action is the wrongful detention of the goods. The case could not have been passed upon by the district court but by taking into consideration all the evidence offered tending to show who was in possession and how that possession had been obtained. The judgment signed by the district judge, undertaking to set forth a finding of fact, stated that, "the defendant, Horsfall, cashier of the Guthrie National bank, took possession of the stock of goods in controversy, under and by virtue of the chattel mortgage," etc., and that the court could not, as a matter of law and right, and did not, as a matter of fact, undertake to ignore the evidence produced before it to the jury, and in the case for consideration at the time the case was taken from the jury to be determined upon "legal questions."

We think, then, that the trial court, in considering this case and rendering its decision, should not have confined its attention to the mortgage, "upon its face" and apart from the evidence, if it had, in fact, done so, "both parties having elected to submit the cause upon the validity of the chattel mortgage in question," accompanied by possession the legal rights of the plaintiff in

error, the Guthrie National bank, were entirely different from what they would have been had it, as mortgagee under the mortgage in question, remained out of possession.

We think that the submission of the cause upon the validity of the mortgage should be interpreted to mean the submissison of the cause as the facts had at the time of that submission been·shown to be.

The judgment of the court below is, therefore, reversed, and the case is remanded to the district court with direction to enter judgment for the plaintiffs in error.

Dale, C. J., having been of counsel, not sitting; all the other Justices concurring.